Crist ELLIS and Norma Wong–Larkin,
Plaintiffs–Appellants,

v.

UNITED AIRLINES, INC., a Delaware
corporation, Defendant–Appellee.

Equal Employment Opportunity
Commission, Amicus
Curiae.

Crist ELLIS and Norma Wong–Larkin,
Plaintiffs–Appellants,

v.

UNITED AIRLINES, INC., a Delaware
corporation, Defendant–Appellee.

Nos. 94–1351, 95–1034.

United States Court of Appeals,
Tenth Circuit.

Jan. 4, 1996.

Rehearing Denied Feb. 9, 1996.

John Mosby, Denver, Colorado (Elisa Moran, Denver, Colorado, with him on the briefs), for Plaintiffs–Appellants.

Kris J. Kostolansky (Michael D. Nosler and Susan L. Strebel, with him on the briefs), of Rothgerber, Appel, Powers & Johnson, Denver, Colorado, for Defendant–Appellee.

Paul D. Ramshaw (James R. Neely, Jr., Gwendolyn Young Reams, and Vincent J. Blackwood, with him on the brief), for Amicus Curiae.

Before EBEL and MCKAY, Circuit Judges, and COOK,* District Judge.

EBEL, Circuit Judge.

Plaintiffs Crist Ellis ("Ellis") and Norma Wong–Larkin ("Wong–Larkin") filed this action against United Air Lines, Inc. ("United") after United refused to hire them as flight attendants when they applied for positions following the bankruptcy of their former employer Frontier Airlines ("Frontier"). Plaintiffs contended that United's refusal to hire them violated (1) the Age Discrimination in Employment Act ("ADEA"), codified as amended at 29 U.S.C. §§ 621–34; and (2) the Airline Deregulation Act ("ADA"), codified as amended at 49 U.S.C. §§ 42101–03 (formerly codified at 49 U.S.C.App. § 1552). United stated that it rejected Plaintiffs' applications because Plaintiffs failed to meet United's weight requirements for new flight attendant hires. In response, Plaintiffs argued that United's explanation was a pretext for intentional discrimination against them because of their age, in violation of the ADEA. Plaintiffs also argued that, even if United did not intentionally discriminate against them because of age, United's age-neutral weight requirements disparately impacted them because of their age, in contravention of the ADEA. Plaintiffs further claim that the weight requirements, whether discriminatory or not, cannot excuse United's failure to

---

* The Honorable H. Dale Cook, Senior District Judge, United States District Court for the Northern District of Oklahoma, sitting by designation.

grant Plaintiffs the preferential hiring treatment to which they were entitled under the ADA as airline employees displaced by deregulation.

The district court granted summary judgment for United on Plaintiffs' ADEA and ADA claims, and then denied Plaintiffs' motion for the payment of certain expenses associated with United's deposition of Plaintiffs' expert witness. Plaintiffs appeal both rulings, and we affirm. We reject Plaintiffs' ADEA claim because Plaintiffs have failed to submit evidence raising a genuine dispute that United's explanation for not hiring them is pretextual, and because we hold that ADEA claims cannot be based on a disparate impact theory of discrimination. Plaintiffs' ADA claim fails because, once again, Plaintiffs failed to produce evidence raising a genuine dispute that United's explanation for not hiring them is pretextual. Finally, we conclude that the district court did not abuse its discretion in ruling that Plaintiffs are not entitled to the payment of further expert witness fees because their motion for such fees was untimely.

## I. BACKGROUND

Ellis and Wong–Larkin worked as flight attendants for Frontier from 1972 and 1970 respectively until they lost their jobs as a result of Frontier's bankruptcy in August 1986. Following Frontier's demise, they applied for flight attendant positions with United on several occasions, but United refused to hire them because they both allegedly failed to meet its weight standards for new flight attendant hires.

United employs two different weight standards for its flight attendants. One standard sets weight limits which must initially be met by new job applicants and the second standard establishes maximum weight limits that cannot be exceeded by flight attendants after they are hired. Both standards specify maximum weights according to height. The standard applied to initial job applicants disregards age entirely, while the weight standard for employees makes allowances for weight gain according to age. United argues that the standard for employees, which allows for some weight gain with age, was a product of its collective bargaining agreement with the flight attendant union.

The following weight chart applied to Plaintiffs as initial job applicants:

| Height | Maximum Weight |
|--------|----------------|
| 5′ 4″ | 132 |
| 5′ 4¼″ | 133 |
| 5′ 4½″ | 134 |
| * * * | |
| 5′ 6″ | 139 |
| 5′ 6¼″ | 140 |
| 5′ 6½″ | 141 |

Had Plaintiffs been hired, they would then have had to keep their weight below the following limits in order to maintain their jobs as flight attendants:

| | Maximum Weight | | | |
|--------|--------------|-------|-------|----------|
| Height | Age 34 & younger | 35–44 | 45–54 | 55 & older |
| 5′ 4″ | 134 | 137 | 140 | 143 |
| 5′ 4¼″ | 135 | 138 | 141 | 144 |
| 5′ 4½″ | 136 | 139 | 142 | 145 |
| * * * | | | | |
| 5′ 6″ | 141 | 144 | 147 | 150 |
| 5′ 6¼″ | 142 | 145 | 148 | 151 |
| 5′ 6½″ | 143 | 146 | 149 | 152 |

As the charts reveal, the height/weight requirements for all new job applicants are the same regardless of the applicant's age, while a nine-pound differential exists between the maximum weights for the youngest and oldest employed female flight attendants of a given height. Thus, new job applicants could fail to satisfy the age-neutral weight requirements used for hiring and yet still be within the weight requirement for existing employees of their same age.

Ellis first applied for a flight attendant position at United in August 1986. Ellis is 5′ 4½″ tall and was 40 years old when she first applied. Therefore, pursuant to United's initial hiring requirements, Ellis could weigh no more than a maximum of 134 pounds. United rejected Ellis' application, stating that she failed to meet its weight requirements and informing her that "[y]our weight history over the past twelve months suggests you would be unable to maintain your weight within our standards." United, however, invited her to apply for other positions that did not have a weight requirement. Unfortunately, no records remain of Ellis' actual weight at that time; however, Ellis has introduced no evidence challenging or denying United's conclusion that she exceeded its weight limits for flight attendant applicants.

Ellis applied a second time on February 4, 1987. She listed her weight as 120 pounds and stated that the heaviest she weighed in the last twelve months was 122 pounds. Based on that application, as updated in September 1988, United interviewed Ellis on December 14, 1988. At that time, United recorded Ellis' weight as 139 pounds, five pounds over the maximum allowable weight for new job applicants.[1] United noted that she was overweight and then sent Ellis a letter stating that it had hired more qualified candidates. Ellis applied a final time in September 1990, and United again refused to hire her. The record before us does not contain any information about Ellis' weight at that time, but, again, Ellis introduced no evidence that she met United's weight requirements at that time.

Wong–Larkin first applied for a flight attendant position at United in September 1986 when she was 38. Some dispute exists concerning Wong–Larkin's height. Plaintiffs maintain that she is 5' 6½" tall, as stated on her resume, and as listed in some of her applications described below. United contends that she is 5' 6", as it recorded after her September 1986 application and as she stated in a deposition. At 5' 6", Wong–Larkin could weigh no more than 139 pounds as an applicant for a flight attendant position. At 5' 6½", she could weigh 141 pounds as an applicant for a flight attendant position.

In any event, United interviewed Wong–Larkin following her September 1986 application. No record remains of her weight at that time; however, Wong–Larkin recalled that United recorded her height as 5' 6" and she agreed that was her height. She felt at the time that she weighed about 142 pounds because that is what she weighed at Frontier in January 1986. United asserted that it did not hire her because of her weight, although she contends that United never articulated a

reason for not hiring her until this litigation arose.

Wong–Larkin applied again on August 29, 1988, at the age of 40, listing her height as 5' 6½" and her weight as 135 pounds on her application. At a subsequent interview on January 14, 1989, she listed her height as 5' 6½" and her weight as 140 pounds. United argues that she was not hired because of her weight. However, once, again, no evidence exists in the record before us of her actual weight at the time. Wong–Larkin states that she received no reply from United at the time and was told that no record existed of her application when she attempted to inquire as to the status of her application. Finally, Wong–Larkin applied on January 31, 1990, listing her height as 5' 6½" and her weight as 150 pounds. The record before us does not contain any information on the disposition of this application; however, United explains, and Plaintiffs do not dispute, that United again denied her application at least purportedly because of her weight.

Based on these events, Plaintiffs filed suit against United, claiming that United (1) discriminated against them in violation of the ADEA; and (2) denied them preferential hiring treatment, as required by the ADA for employees displaced by deregulation of the airline industry.[2] In a related action, United moved for summary judgment against different plaintiffs on their ADA claims in that case, arguing that those plaintiffs had waived their first-hire rights and were barred from raising certain of their claims by the statute of limitations. The district court granted the motion and then, for substantially the same reasons, also granted summary judgment for United in the instant case. Pending appeal, the court stayed consideration of Plaintiffs' ADEA claim. We reversed the district court's ruling as to the ADA in the related case of *Bowdry v. United Air Lines, Inc.,* 956 F.2d 999 (10th Cir.), *cert. denied,* 506

---

1. Plaintiffs note that United misrecorded Ellis' height as 5'3¼", Appellant App. at 78, but do not base any part of their claim on that mistake.

2. Plaintiffs—joined by co-plaintiff Charles Bowdry—initially filed suit against United on December 16, 1988, alleging claims under the ADA and 42 U.S.C. § 1981. Appellee Supp.App. at 1. Subsequently, on June 20, 1990, Plaintiffs filed a second independent complaint, which they amended on July 24, 1990, charging that United discriminated against them in violation of the ADEA. Appellant App. at 1–5. Upon Plaintiffs' motion, the district court consolidated the two actions. District Ct.Memorandum Opinion and Order at 1. Plaintiffs' § 1981 claim is not before us.

U.S. 831, 113 S.Ct. 97, 121 L.Ed.2d 57 (1992), and the court reinstated Plaintiffs' claims in the instant action.

United then moved for summary judgment again in this case, arguing that its refusal to hire Plaintiffs because of their failure to meet its weight standards did not discriminate against them because of their age and was not in violation of the ADA. The district court granted summary judgment for United, and Plaintiffs then filed the instant appeal.

Approximately four and one-half months after the district court entered its judgment and Plaintiffs filed this appeal, Plaintiffs filed a motion with the district court to order United to pay certain fees incurred by Plaintiffs' expert witness when that witness was deposed by United.[3] United had paid Plaintiffs' expert $1,961.36, but refused to pay an additional $4,603.00 incurred by the expert for preparation, review, and travel associated with the deposition. The district court denied Plaintiffs' motion as untimely, and Plaintiffs appeal that ruling, as well as the grant of summary judgment for United on their ADEA and ADA claims.

## II. ADEA

Plaintiffs articulate two distinct theories to support their claim that United discriminated against them in violation of the ADEA when it refused to hire them as flight attendants.[4] First, Plaintiffs argue that United intentionally discriminated against them because of their age. Second, Plaintiffs maintain that United's use of age-neutral weight requirements for hiring, even if not motivated by a discriminatory animus against age, disparately impacted them because of their age. The district court found that Plaintiffs had abandoned their disparate treatment claim in a pretrial concession to the court. As to the

disparate impact claim, the court assumed without deciding that the ADEA recognizes a disparate impact theory of discrimination, but ruled that Plaintiffs had not produced evidence upon which a reasonable jury could find that United's use of weight standards had a disparate impact upon older flight attendant applicants.

■ We review the district court's grant of summary judgment for United de novo, *James v. Sears, Roebuck & Co.*, 21 F.3d 989, 997–98 (10th Cir.1994),[5] and affirm. Contrary to the district court, we conclude that Plaintiffs did not abandon their disparate treatment claim in their pretrial dialogue. Nevertheless, we agree that United was entitled to summary judgment because Plaintiffs have failed to create a genuine dispute of fact that United discriminated against them on the basis of age, either intentionally or in effect.

### A. *Disparate Treatment*

■ We consider first whether Plaintiffs abandoned their disparate treatment claim below. Plaintiffs' complaint was broad enough to include a disparate treatment claim, and plaintiffs further articulated such a claim in response to United's motion for summary judgment. United addressed that claim in its reply to Plaintiffs' response. However, because the district court found that at a subsequent hearing on United's summary judgment motion Plaintiffs indicated that they were alleging age discrimination only under a disparate impact theory, the court declined to address a disparate treatment claim. We treat the district court's conclusion as a primarily factual finding that Plaintiffs abandoned their intentional discrimination claim, and review for clear error,

---

3. The court had previously ordered each party to bear its own costs.

4. The ADEA provides, in relevant part, that "[i]t shall be unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

5. We construe the factual record and all reasonable inferences therefrom in the light most favor-

able to the party opposing summary judgment. *Blue Circle Cement, Inc. v. Board of County Comm'rs*, 27 F.3d 1499, 1503 (10th Cir.1994). "Summary judgment is appropriate if 'there is no genuine issue as to any material fact' and ... the moving party is entitled to a judgment as a matter of law." *Hagelin for President Comm. v. Graves*, 25 F.3d 956, 959 (10th Cir.1994) (quoting Fed.R.Civ.P. 56(c)), *cert. denied*, —— U.S. ——, 115 S.Ct. 934, 130 L.Ed.2d 880 (1995).

see Pierce v. Underwood, 487 U.S. 552, 558, 108 S.Ct. 2541, 2546, 101 L.Ed.2d 490 (1988) (questions of fact reviewable for clear error). In so doing, we conclude that Plaintiffs clearly did not abandon their intentional discrimination claim.

At the June 1, 1994 hearing on United's summary judgment motion, the following colloquy occurred between Plaintiffs' counsel Mosby and the court:

> THE COURT: ... I assume you're talking about your disparate impact case at this point in time.
>
> MOSBY: That's the only case I'm talking about, Your Honor, because I think that's our argument in this case, is disparate impact.
>
> THE COURT: So, you're not making a disparate treatment case, is that what you're saying?
>
> MOSBY: Well, it might be difficult under the new cases that have come down lately.
>
> THE COURT: I wouldn't abandon disparate treatment quite so quickly.
>
> MOSBY: I haven't abandoned it. I'm just going to rest on—[Mosby gets interrupted by court here and conversation shifts focus]

Although Plaintiffs' counsel indicated that Plaintiffs' case rested on a disparate impact argument ("that's our argument in this case, is disparate impact"), he also expressly stated that he did not intend to abandon the disparate treatment theory ("I haven't abandoned it."). Counsel's subsequent statement was cut off, but it suggests he was planning to rest on his brief on that claim.

Furthermore, this is not a case of a party trying to preserve an issue that it has failed to prosecute in substance. Before the purported abandonment, Plaintiffs articulated the legal and factual basis for their disparate treatment claim in response to United's motion for summary judgment, and United responded to the merits of Plaintiffs' claim in reply. Accordingly, we agree with Plaintiffs that they did not abandon their disparate treatment claim.

Turning then to the merits of a disparate treatment claim under the ADEA, a plaintiff must show that age actually motivated an employer's decision. *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 609–11, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993). In the instant case, Plaintiffs offer no direct evidence of United's discriminatory intent, but rather rely on circumstantial evidence. Where a discrimination claim rests on circumstantial evidence, we employ the *McDonnell Douglas* burden shifting scheme, *see McDonnell Douglas v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), which we have applied to ADEA cases from the Title VII context where it was originally developed, *Cooper v. Asplundh Tree Expert Co.,* 836 F.2d 1544, 1547 & n. 1 (10th Cir.1988) (applying burden shifting proof scheme to age discrimination claim). Under that scheme, Plaintiffs must first establish a prima face case by showing that (1) they were within the protected age group; (2) they were not hired; (3) they were qualified for the position; and (4) United filled the positions with younger applicants. *See id.* at 1547.

If Plaintiffs can establish a prima facie case, then the burden shifts to United to articulate a facially nondiscriminatory reason for not hiring Plaintiffs. *EEOC v. Flasher,* 986 F.2d 1312, 1315–16 (10th Cir.1992). If United articulates such a reason, the burden reverts to Plaintiffs to establish United's discriminatory motivation by either (1) presenting direct evidence that age was a determinative factor in United's decision;[6] or (2) presenting evidence upon which a jury could conclude that United's proffered explanation is pretextual and unworthy of credence. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981); *Randle v. City of Aurora,* 69 F.3d 441, 452 n. 17 (10th Cir. 1995) ("[A] civil rights plaintiff may withstand a motion for summary judgment ... if the plaintiff establishes a prima facie case and presents evidence that the defendant's proffered nondiscriminatory reason was pretextual—i.e., unworthy of belief.").

---

**6.** Of course, Plaintiffs can use direct evidence to establish discrimination and avoid the burden shifting analysis altogether. *See Heim v. Utah,* 8 F.3d 1541, 1546 (10th Cir.1993).

As to the prima facie case, neither party disputes that (1) Ellis was within the age group protected by the ADEA each time she applied for a job with United, and Wong–Larkin was within the protected age group beginning with her 1988 application;[7] (2) United rejected applications from each plaintiff while each was protected by the ADEA; and (3) United hired younger applicants instead. However, United argues that Plaintiffs have failed to show that they were qualified for the flight attendant positions—an essential element of the prima facie case—because they did not meet United's weight standards for new hires. In the event that the plaintiffs do establish a prima facie case, United then relies on the weight standards as its nondiscriminatory explanation for why it did not hire Plaintiffs. Plaintiffs argue that United's invocation of its weight standards is a pretext for its true discriminatory motives, and that those weight standards should not be used to determine their qualifications to serve as flight attendants.

Here, even if plaintiffs had established a prima facie case (which we doubt),[8] the court still properly granted summary judgment for defendant because plaintiffs have not presented any evidence that United's explanation for its hiring decisions was pretextual. Plaintiffs have produced no evidence that United selectively applied its weight standards only to older applicants and hired younger applicants who failed to meet those standards. Plaintiffs have not shown that they actually met the weight guidelines and, thus, must have been rejected for some other reason.[9] Finally, Plaintiffs have failed to produce other evidence that United chose its

7. The ADEA covers individuals who are at least 40 years of age. 29 U.S.C. § 631(a). Prior to January 1, 1987, it covered individuals who were at least 40 years of age but less than 70 years of age. Ellis turned 40 on December 6, 1985, and Wong–Larkin turned 40 on August 8, 1988.

8. In *MacDonald v. Eastern Wyoming Mental Health Ctr.*, 941 F.2d 1115, 1118–22 (10th Cir. 1991), we held that it was improper to consider *the employer's explanation that it discharged the plaintiff* because she was doing unsatisfactory work in assessing whether the plaintiff established a prima facie case. *See id.* at 1119 (following majority of circuits that have "refus[ed] to consider a defendant's proffered reasons for discharge in assessing the existence of a prima facie case"). Rather, we allowed *the plaintiff to satisfy her prima facie burden by producing evidence of her objective qualifications, id.* at 1121, and then placed the burden on the plaintiff to rebut the employer's contention that the plaintiff was not truly qualified at the pretext stage of our analysis, *id.* at 1121–22; *see also Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1506 (5th Cir.1988) ("The lines of battle may then be drawn over the employer's articulated reason for its action and whether that reason is a pretext for age discrimination."). However, *MacDonald* involved subjective employment criteria, which are particularly easy for an employer to invent in an effort to sabotage a plaintiff's prima facie case and mask discrimination, whereas the present case involves objective hiring criteria applied to all applicants. *MacDonald*, 941 F.2d at 1121 ("[W]e conclude that a plaintiff may make out a prima facie case of discrimination in a discharge case by credible evidence that she continued to possess the *objective qualifications* she held when she was hired...." Emphasis added.) Of course, if a plaintiff can show that the employer

has imposed an objective employment criteria *for the purpose of* excluding a protected class, then such a plaintiff will have presented direct proof of discrimination and the burden shifting mechanism of *McDonnell Douglas* will not be needed. Here, plaintiffs failed to establish that they met the objective weight qualification for new flight attendants. Nevertheless, even if plaintiffs were deemed to have satisfied the prima facie case, they have failed to establish that United's reason for not hiring them was pretexual.

9. We pause somewhat over Wong–Larkin's 1988 application due to the apparent dispute about her height, but ultimately conclude that she has not created a genuine dispute that she met the guidelines. Wong–Larkin listed her height as 5′6½″ at her 1989 interview following that application, and, thus, at her then stated weight of 140 pounds would have satisfied United's standards. However, she would not have satisfied United's standards for someone 5′6″. No records were introduced of Wong–Larkin's actual height and weight at that time. However, Wong–Larkin admitted at a deposition that she is 5′6″ and that United actually measured her at 5′6″ in 1986. Accordingly, we conclude that Wong–Larkin has not provided an evidentiary basis upon which a jury could infer that United treated her as 5′6½″, given that she admits that *she is physically 5′6″ and that United had previously recorded her height as such.* Further, the fact that United interviewed Wong–Larkin after receiving her application with a stated weight of 140 pounds does not show that United was not concerned about her weight. Although United generally only interviews applicants who meet its basic hiring criteria—including weight—United interviewed Wong–Larkin in 1989 at an open house and not after screening her application.

weight standards in order to keep out older applicants.

 Plaintiffs argue that United could not have been genuinely concerned about their weight because, at least on several of their applications, they satisfied the standards that United applies to flight attendants after they are hired.[10] In essence, Plaintiffs argue that United cannot claim that its weight requirements for new hires promote its business justifications for restricting the weight of flight attendants since flight attendants, once hired, have more relaxed weight requirements. However, United explains that it employs different standards for its current employees because it was obligated to do so by its collective bargaining agreement with its union.[11] Given the age-sensitive criteria applied to flight attendants once hired, United's continued use of age-neutral hiring criteria, at first glance, might make little sense; however, United justified this practice in the district court by asserting that it does not inquire into the age of its applicants because, in many states, such an inquiry is illegal. In any event, an employer's exercise of erroneous or even illogical business judgment does not, by itself, constitute pretext. *See Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1426 (10th Cir.1993) ("The ADEA is not a vehicle for reviewing the propriety of business decisions."). That United allows older incumbent flight attendants greater leeway in their weight once

hired because of the union does not establish that United does not truly want all of its new hires to meet its uniform weight requirements or suggest that United selected those criteria with an intent to screen out older applicants. The most Plaintiffs may have shown is that United discriminated between its incumbent employees and applicants on the matter of weight. However, that type of discrimination is not prohibited by the ADEA, and, in any event, United offered the unrefuted explanation for the disparate treatment that the more liberal standard was a product of its collective bargaining agreement. Thus, Plaintiffs' disparate treatment claim must fail, and we affirm the grant of summary judgment for United on this claim.

### B. *Disparate Impact*

 Plaintiffs claim, alternatively, that United's hiring decisions violated the ADEA because the decisions were based on weight requirements that disparately impacted older job applicants. Disparate impact claims, as recognized in the Title VII context, *see Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971), challenge "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Hazen Paper*, 507 U.S. at 609, 113 S.Ct. at 1705 (quoting

10. Ellis weighed 139 pounds when United interviewed her after her 1987 application, the maximum allowable weight for an incumbent 40–year old 5′4½″ tall flight attendant. Wong–Larkin weighed 140 pounds when United interviewed her after her 1988 application—at least according to her application—four pounds less than the maximum allowable weight for an incumbent 40–year old 5′6″ tall flight attendant.

11. Plaintiffs argue that United cannot rely on the collective bargaining agreement to explain why it employs dual weight standards because the agreement was not introduced into evidence. However, United produced an affidavit describing the collective bargaining agreement, and Plaintiffs have cited no evidentiary ground on which the representations in that affidavit should have been excluded from consideration for summary judgment purposes. Plaintiffs merely claim on appeal that this affidavit was inaccurate, and have submitted on appeal newly discovered affidavits from an unrelated case that they maintain show that United fraudulently mischar-

acterized the collective bargaining agreement to the district court. Plaintiffs further request the award of fees and costs that they have incurred responding to this allegedly fraudulent affidavit pursuant to Fed.R.Civ.P. 56(g). However, Plaintiffs' affidavits are not properly before us nor were they before the district court, and, in any event, they do not demonstrate that United acted fraudulently. Furthermore, Plaintiffs have not explained why they did not produce the collective bargaining agreement themselves below, or otherwise attack United's characterization of the agreement. Accordingly, we deny Plaintiffs' motion for fees and costs.

United has filed a motion on appeal to strike Plaintiffs' assertion that United acted in bad faith and to sanction Plaintiffs' counsel. As explained above, we have not considered Plaintiffs' newly submitted evidence. Accordingly, we grant United's motion to strike, although we deny United's motion for sanctions.

*International Bhd. of Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977)). Whether a disparate impact claim can be brought under the ADEA is, however, an open question. *See Hazen Paper,* 507 U.S. at 610, 113 S.Ct. at 1706 ("[W]e have never decided whether a disparate impact theory of liability is available under the ADEA, and we need not do so here.") (internal citation omitted); *Faulkner,* 3 F.3d at 1428 (explaining that "[t]he Tenth Circuit has never directly addressed whether a disparate impact claim is cognizable under the ADEA," and leaving the question open). Based on our interpretation of the statutory text and congressional intent, we now answer that question and hold that disparate impact claims are not cognizable under the ADEA; thus, we affirm the district court's grant of summary judgment for United on that ground.

Our interpretation begins with the text of the ADEA. The ADEA's core prohibition of discrimination provides, in relevant part, that

> [i]t shall be unlawful for an employer—(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of such individual's age;* (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, *because of such individual's age....*

(Emphasis added.) 29 U.S.C. § 623(a).

Section 623(a)(1), which contains the ADEA's explicit prohibition of discriminatory refusals to hire, specifically proscribes only decisions not to hire *because of* someone's age. The most obvious reading of the clause, "because of such individual's age," is that it prohibits an employer from intentionally treating someone differently based on his or her age. It would be a stretch to read the phrase "because of such individual's age" to prohibit incidental and unintentional discrimination that resulted because of employment decisions which were made for reasons *other than age.* *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 611–13, 113 S.Ct. 1701, 1707, 123 L.Ed.2d 338 (1993) ("The ADEA requires the employer to ignore an employee's age ...; it does not specify further characteristics that an employer must also ignore.").[12]

■ Admittedly, in *Griggs,* the Supreme Court construed language in Title VII that was nearly identical to that found in Section 623(a) of the ADEA to create a disparate impact theory of discrimination. *Griggs,* 401 U.S. at 431, 91 S.Ct. at 853 (holding that employment practices which are neutral in form but which result in discriminatory effects are prohibited unless justified by business necessity). Furthermore, we generally interpret the ADEA in tandem with Title VII because the ADEA was based in substantial part on Title VII. *See Lorillard v. Pons,* 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978) (noting that "the prohibitions of the ADEA were derived *in haec verba* from Title VII"); *see also Cooper,* 836 F.2d at 1547 & n. 1 (applying burden shifting scheme from Title VII to ADEA disparate treatment claim). However, the ADEA differs from Title VII in salient ways that counsel against interpreting the ADEA to recognize disparate impact claims and that reinforce our reading of the text of the ADEA.[13]

---

**12.** We do not dwell on Section 623(a)(2) because it does not appear to address refusals to hire at all, *see EEOC v. Francis W. Parker School,* 41 F.3d 1073, 1077–78 (7th Cir.1994), *cert. denied,* ─── U.S. ───, 115 S.Ct. 2577, 132 L.Ed.2d 828 (1995). We recognize that the Supreme Court applied language similar to § 623(a)(2) in Title VII to job applicants in *Griggs. Griggs,* 401 U.S. at 426–27 & n. 1, 91 S.Ct. at 851 & n. 1. However, following *Griggs* in 1972, Congress expressly added applicants to the parallel provision in Title VII, *see* 42 U.S.C. § 2000e–2(a)(2), but not to the ADEA, indicating an intent that § 623(a)(2) of the ADEA not apply to applicants

as § 623(a)(1) expressly does. Moreover, Section 623(a)(2) concludes with the same phrase as does Section 623(a)(1), and a parallel reading of those two sections would require us to conclude that they are both limited to intentional discrimination. *DiBiase v. SmithKline Beecham Corp.,* 48 F.3d 719, 733 (3d Cir.), *cert. denied,* ─── U.S. ───, 116 S.Ct. 306, 133 L.Ed.2d 210 (1995); *EEOC v. Francis W. Parker School,* 41 F.3d at 1077–78.

**13.** Congress enacted the ADEA before *Griggs,* and, therefore, could not have intended literally to apply *Griggs* to the ADEA by incorporating

First, Section 623(f) of the ADEA provides in relevant part that:

> [i]t shall not be unlawful for an employer, employment agency, or labor organization—(1) to take any action otherwise prohibited under subsections (a), (b), (c), or (e) of this section where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business, *or where the differentiation is based on reasonable factors other than age . . . .* (Emphasis added.)

This authorization of actions based on "factors other than age" is similar to section 206(d)(1) of the Equal Pay Act. 29 U.S.C. § 206(d)(1).[14] The Supreme Court interpreted section 206(d)(1) of the Equal Pay Act to preclude disparate impact claims. *County of Washington, Ore. v. Gunther,* 452 U.S. 161, 170–71, 101 S.Ct. 2242, 2248–49, 68 L.Ed.2d 751 (1981) (distinguishing Title VII on the basis of that provision).

Second, the legislative history of the ADEA suggests it was not enacted to address disparate impact claims. Congress enacted the ADEA in large part on a report it commissioned from the Secretary of Labor, The Older American Worker: Age Discrimination in Employment (1965) ("Secretary of Labor Report"). *See EEOC v. Wyoming,* 460 U.S. at 229–31, 103 S.Ct. at 1056–57 (tracing legislative history of ADEA and central role of Secretary of Labor Report); *see also* Sloan, *supra,* at 512 ("Because other materials are sparse, discussions of the ADEA's legislative history usually focus on the Secretary's Report."). That report differentiated between what it termed "arbitrary discrimination" based on age (intentional discrimination based on age stereotypes) and problems resulting from factors that "affect older workers more strongly, as a group,

than they do younger employees," (disparate impact) *id.* at 5, 11. The report then recommended that Congress prohibit "arbitrary discrimination," but that factors which "affect older workers" be addressed through programmatic measures to improve opportunities for older workers. *Id.* at 21–25. The ADEA's stated purposes and sections 622 and 623 reflect different approaches for intentional or arbitrary discrimination and the more benign problem of disparate impact.

Third, a comparison of Congress' subsequent amendments to Title VII and to the ADEA further reveals this congressional intent. Specifically, Congress explicitly added a disparate impact cause of action to Title VII in the 1991 Civil Rights Act, *see* Pub.L. No. 102–166, § 105, 105 Stat. 1071, 1074–75 (1991), codified at 42 U.S.C. § 2000e–2(k). However, Congress added no such parallel provision to the ADEA, despite its amendment of other portions of the ADEA, *see, e.g., id.* at § 115, 105 Stat. at 1079 (amending the time period within which an employee may file civil actions); *id.* at § 302(2), 105 Stat. at 1088 (extending coverage of ADEA to congressional employees), thus signalling its intent not to provide for a disparate impact cause of action under the ADEA.

Fourth, the Supreme Court's recent *Hazen Paper* decision further informs our interpretation of the ADEA. The Court, although not expressly ruling on the issue, indicated in dicta that the ADEA only prohibits intentional discrimination. In *Hazen Paper,* the Court addressed a disparate treatment claim against an employer who fired a 62 year old employee just a few weeks before his pension benefits would vest. The Court observed that "[d]isparate treatment captures the essence of what Congress sought to prohibit in

---

language from Title VII. Thus, the relevant inquiry is whether the factors that drove the Supreme Court in *Griggs* to recognize disparate impact claims in Title VII apply to the ADEA. However, *Griggs* did not base its holding on the text of Title VII, but rather looked primarily to the larger objectives underlying Congress' enactment of Title VII. *See Griggs,* 401 U.S. at 429–30, 91 S.Ct. at 852–53; Michael C. Sloan, "Disparate Impact in the Age Discrimination in Employment Act," 1995 Wis.L.Rev. 507, 517 (1995) ("[T]he *Griggs* Court did not analyze statutory language to justify its decision, but instead relied

on its interpretation of congressional intent and legislative history."). As explained in the text, the ADEA differs from Title VII in these nontextual considerations, as well as in its text and structure.

**14.** The Equal Pay Act provides, in relevant part, that employers can pay unequal wages to men and women where the pay differential is "based on any other factor other than sex . . . ." 29 U.S.C. § 206(d)(1).

the ADEA." *Hazen Paper*, 507 U.S. at 610, 113 S.Ct. at 1706. Even more to the point, the Court said that the ADEA was enacted to prevent older workers from being stigmatized by inaccurate stereotyping and that,

> "When the employer's decision is wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears. This is true *even if the motivating factor is correlated with age,* as pension *status typically is." Id.* (Emphasis added.)

And, reiterated that theme again later when it said,

> The law requires the employer to ignore an employee's age ...; it does not specify further characteristics [like the correlation between age and the likelihood that a worker will qualify for a pension] that an employer must also ignore." *Id.* (Emphasis added.)

Although the Court's holding was technically limited to the disparate treatment claim before it, one cannot read that opinion without receiving the strong impression that the Supreme Court is suggesting that the ADEA does not encompass a disparate impact claim.[15] The Chief Justice and Justices Kennedy and Thomas concurred, noting that "there are substantial arguments that it is improper to carry over disparate impact analysis from Title VII to the ADEA." *Hazen*, 507 U.S. at 618, 113 S.Ct. at 1710.

Fifth, of those courts that have considered the issue since *Hazen*, there is a clear trend toward concluding that the ADEA does not support a disparate impact claim. *DiBiase v. SmithKline Beecham Corp.*, 48 F.3d 719, 732–34 (3d Cir.1995) (holding that there is no disparate impact claim under the ADEA); *EEOC v. Francis W. Parker School*, 41 F.3d 1073, 1076–77 (7th Cir.1994) (same); *Lyon v. Ohio Educ. Ass'n & Professional Staff Union*, 53 F.3d 135, 138–39 (6th Cir.1995) (same). *But see, Mangold v. California Pub. Utilities Comm'n*, 67 F.3d 1470, 1474 (9th Cir.1995) (not deciding the issue but referring to earlier Ninth Circuit precedent—one

pre-*Hazen* case and one post-*Hazen* case perceiving no conflict between *Hazen* and its decision—that recognize a disparate impact claim under the ADEA); *Houghton v. Sipco, Inc.*, 38 F.3d 953, 958–59 (8th Cir.1994) (assuming, without analysis, that a disparate impact claim is viable under the ADEA).

Finally, we note that permitting disparate impact age discrimination claims would create several practical problems. In particular, many courts have interpreted the ADEA to prohibit an employer from favoring anyone younger than a protected plaintiff. *See Rinehart v. City of Independence, Mo.*, 35 F.3d 1263, 1266 & n. 2 (8th Cir.1994) (noting majority position), *cert. denied,* —— U.S. ——, 115 S.Ct. 1822, 131 L.Ed.2d 744 (1995). Accordingly, the line defining the class that is disparately impacted by a challenged policy is an imprecise one, which could be manipulated to either strengthen or weaken the impact of a policy on some age group. As then District Court Judge Higgenbotham remarked,

> the disparate impact analysis in race cases cannot be extended easily to age cases given that the facially neutral factors challenged almost certainly will generate different impacts for different age groups because each point in the life cycle tends to be associated with different distributions. "Unless virtually all facially neutral classifications are to become suspect, the use of nonage factors ought to enjoy a strong presumption of reasonableness notwithstanding the age-specific differential impacts that inevitably ensue."

*Cunningham v. Central Beverage, Inc.*, 486 F.Supp. 59, 62–63 (N.D.Tex.1980) (quoting Peter H. Schuck, *The Graying of Civil Rights Law: The Age Discrimination Act of 1975*, 89 Yale L.J. 27, 35–37 (1979)).

Thus, policy considerations add to our analysis of precedent and the ADEA's text, structure, purposes, and legislative history, and confirm our ultimate holding that plaintiffs cannot bring a disparate impact claim under the ADEA. As such, we affirm the

---

15. For example, the Court also explained that an employer cannot rely on age as a proxy for some quality like productivity, but "must instead focus on those factors directly," 507 U.S. at 611, 113 S.Ct. at 1706, implying that an employer could in good faith rely on some factor other than age even if it similarly resulted in an older employee losing his or her job.

district court's grant of summary judgment for United on Plaintiff's disparate impact claim on that ground.

## III. ADA

Even if United did not violate the ADEA, Plaintiffs maintain that United violated the ADA by not fulfilling its affirmative duty under that statute to hire Plaintiffs. The ADA defines an airline employee who was employed by a covered carrier for four years prior to passage of the ADA as a "protected employee." 49 U.S.C. § 42101(a)(3). A protected employee who loses his or her job as a result of deregulation becomes a "designated employee" and is entitled to a right of first hire by other covered carriers. *Id.* at § 42103(a). However, under Department of Labor regulations promulgated pursuant to the ADA, an air carrier may require an applicant to meet "any prerequisites or qualifications determined by it for any vacancy" with the exception of initial hiring age and certain other criteria not here relevant. 29 C.F.R. §§ 220.20(a) & 220.21(a)(1). United argues that its weight requirements for new hires constitute such permissible prerequisites or qualifications, and that Plaintiffs' ADA claim, therefore, fails as a matter of law. Plaintiffs do not challenge the Department of Labor regulations per se, but respond that United's use of weight standards is pretextual for "limit[ing] employment opportunities for designated employees on the basis of ... [i]nitial hiring age." Plaintiffs further argue that even if the standards do not discriminate on the basis of age, they are not job-related, and, therefore, cannot be considered bona fide job qualifications. We disagree for substantially the same reasons outlined above in our consideration of Plaintiffs' ADEA claim.

 As a general matter, weight requirements are permissible job-related criteria for flight attendants. As the Department of Labor stated in an opinion letter contained in the record before us,

carriers [possess] broad latitude in determining qualifications for prospective employees. For example, height, weight, or vision requirements are examples of commonly used, objective hiring criteria for various jobs.... We believe that the carriers are entitled to apply all such criteria, and to do so in diverse ways.

Letter from H. Charles Spring, Acting Deputy Under Secretary, U.S. Department of Labor, to Mary P. Weir, Northwest Airlines, Inc. (June 20, 1991); *see also Jarrell v. Eastern Air Lines, Inc.,* 430 F.Supp. 884, 891 (E.D.Va.1977), *aff'd* 577 F.2d 869 (4th Cir. 1978). Accordingly, we do not believe the ADA permits us to second-guess the business judgment of employers any more than does the ADEA. An air carrier may require an applicant to meet "*any* prerequisites or qualifications" except initial hiring age, 29 C.F.R. §§ 220.20(a) & 220.21(a)(1) (emphasis added), and other criteria not here involved, and, as explained above, Plaintiffs have not shown that United's use of weight standards was pretextual.[16]

The Department of Labor opinion letter also stated that an airline's hiring discretion is not unlimited, and that an airline cannot "apply qualifications that defeat the purpose of the Act." However, in addition to their failure to establish that United discriminated against them based on their age, Plaintiffs have also failed to introduce any evidence that the weight standards acted generally to frustrate the first hire rights of designated employees by preventing them from getting hired. Accordingly, we do not believe that United's use of weight standards defeated the purposes of the ADA or were otherwise impermissible, and we affirm the district

**16.** In the context of Plaintiffs' ADA claim, we did not consider Wong–Larkin's September 1986 application, because she was only 38 years old at the time and not yet protected by the ADEA. Because no threshold age requirement exists for the ADA, we consider that episode in the context of Plaintiffs' ADA claim. However, in so doing we do not alter our conclusion that Plaintiffs have failed to establish pretext. Although no record exists of Wong–Larkin's actual weight in September 1986, she weighed 142 pounds several months earlier while working at Frontier and admitted that she likely weighed the same when she applied to United in September. She also listed her height at that time as 5′6″. At that height and weight, Wong–Larkin exceeded United's weight requirements.

court's grant of summary judgment on Plaintiffs' ADA claim.

## IV. EXPERT WITNESS FEES

Independent of their discrimination claims, Plaintiffs argue that United should have to pay fees incurred by Plaintiffs' expert witness for preparation, review, and travel associated with United's deposition of that expert.[17] Fed.R.Civ.P. 26(b)(4)(C) provides that "[u]nless manifest injustice would result ... the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery...." United paid Plaintiffs' expert $1,961.36 for its deposition, but refused to pay $4,603.00 in attendant expenses. The district court denied Plaintiffs' motion to compel United to pay additional expenses because (1) Plaintiffs' motion was untimely; (2) the court lacked jurisdiction over the issue because the action had already been appealed before Plaintiff filed its motion; and (3) Plaintiffs' request was not for "reasonable" fees, as required under Fed. R.Civ.P. 26(b)(4)(C), even if fees for review, preparation and travel time are recoverable generally. We agree that Plaintiffs' motion was untimely and affirm on that ground. Therefore, we do not reach the other issues presented in the district court's ruling.

Rule 26(b)(4)(C) itself does not specify whether or when a party must demand payment of fees to its expert. However, the advisory committee notes to the rule provide that "[t]he court may issue the latter order [to pay fees and expenses that a party incurs in obtaining information from an expert] as a condition of discovery, or it may delay the order until after discovery is completed." Fed.R.Civ.P. 26(b)(4)(C) (Notes of Advisory Committee on Rules to 1970 Amendment). Pursuant to that authorization, courts have awarded fees under Rule 26(b)(4)(C) after trial. See, e.g., Louisiana Power & Light Co. v. Kellstrom, 50 F.3d 319, 336 (5th Cir.), cert. denied, — U.S. —, 116 S.Ct. 173, 133 L.Ed.2d 113 (1995); Chambers v. Ingram, 858 F.2d 351, 360–61 (7th Cir.1988). Nevertheless, Plaintiffs cite no authority for the proposition that a court must award Rule 26(b)(4)(C) fees no matter how long after entry of final judgment a party requests such fees. In the present case, we do not believe the district court abused its discretion[18] in ruling that Plaintiffs' motion for fees was untimely given that it was filed four and one-half months after the court had entered a final judgment in the case and ordered each party to bear its own costs.[19]

Courts have granted motions for fees under Rule 26(b)(4)(C) that were filed even later than Plaintiffs' motion in the instant case. See, Kellstrom, 50 F.3d at 336 (holding that request for Rule 26 costs filed nine months after original application for taxation of costs not untimely). However, special circumstances usually exist to excuse the delay. See id. at 336 n. 37 ("We do not mean to imply that, under all circumstances, a party

---

17. Plaintiffs appealed this issue in case no. 95–1034 and moved to consolidate that appeal with its appeal of the ADEA and ADA issues in case no. 94–1351. Having already heard the related appeals as separate matters, we reject Plaintiffs' motion but nevertheless address both appeals in this opinion.

18. Although we review a district court's conclusions of law de novo, we believe the present dispute, as presented in this appeal, falls within the court's general discretion over discovery disputes. See GWN Petroleum Corp. v. Ok–Tex Oil & Gas, Inc., 998 F.2d 853, 858 (10th Cir.1993) (discovery rulings are reviewed for an abuse of discretion); see also Riggs v. Scrivner, Inc., 927 F.2d 1146, 1149 (10th Cir.) (district court's award of costs reviewed under abuse of discre-

tion standard), cert. denied 502 U.S. 867, 112 S.Ct. 196, 116 L.Ed.2d 156 (1991).

19. Plaintiffs argue that United's refusal to pay these fees actually constituted a violation of this earlier order directing each party to pay its own costs. Plaintiffs reason that the full amount of the expert's fees were costs incurred by United since United requested the deposition. As such, Plaintiffs assert that they did not actually need to file a motion for fees under Fed.R.Civ.P. 26(b)(4)(C). However, the district court apparently did not agree with Plaintiffs' contention that United violated its earlier order, given that it rejected Plaintiffs' subsequent motion. We decline now to question the district court's construction of its own order, and focus only on Plaintiffs' subsequent motion.

may file a request for Rule 26(b)(4)(C) costs nine months after judgment on the merits. The record reflects multiple changes and disputes about the fees extending over a period of many months. Accordingly, we merely hold that on the specific facts of this case, Comstock may recover its Rule 26(b)(4)(C) costs."). Here, the parties engaged in a prolonged dispute about United's responsibility to reimburse Plaintiffs' expert, but the dispute ran its course and reached an impasse before the court granted summary judgment for United, as the letters exchanged between opposing counsel in November and December of 1993 reflect. Nothing in the intervening four and one-half months altered the dispute. Accordingly, we hold that the district court did not abuse its discretion in declining to award Plaintiffs fees to which they might otherwise have been entitled if it were not for their waiting so long to bring the issue to the court's attention.[20]

## V. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment for United. We further AFFIRM the district court's denial of Plaintiffs' motion for Rule 26(b)(4)(C) fees on the ground that the motion was untimely.

**20.** United argues that we lack jurisdiction even to consider this issue because Plaintiffs failed to perfect a proper appeal of the district court's ruling. Specifically, United contends that Plaintiffs' failure to appeal the issue of costs pursuant to Fed.R.App.P. 4(a)(1) within thirty days of the district court's grant of summary judgment and order to each party to bear its own costs barred the Plaintiffs from later appealing following the district court's denial of its motion for additional expert witness fees. United moved to dismiss Plaintiffs' appeal of the expert witness fee issue on that ground. We deny United's motion because Plaintiffs appealed the district court's ruling on its motion for additional fees in a timely manner. We further deny United's motion for fees and costs in responding to Plaintiffs' appeal because such appeal was not frivolous.