UNITED STATES COURT OF APPEALS

**Filed 12/18/96**

TENTH CIRCUIT

_____

STEPHEN A. BANAS, JR.,                    )
                                          )
    Plaintiff-Appellant,                  )
                                          )
    v.                                    )    No. 96-1059
                                          )    (D.C. No. 93-B-664)
PUBLIC SERVICE COMPANY                    )    (D. Colorado)
OF COLORADO,                              )
                                          )
    Defendant-Appellee.                   )
                                          )

_____

ORDER AND JUDGMENT*

_____

Before: **KELLY, HOLLOWAY**, and **WEIS,**[1] Circuit Judges.

_____

**Submitted on the briefs:**

In this appeal, plaintiff asserts a claim of discrimination in the termination of his

employment, in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§

621-34. The district court entered partial summary judgment for the defendant employer

on the plaintiff's theory disparate treatment. After a jury returned a verdict in favor of

_____

\*     This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under

[1]     The Honorable Joseph F. Weis, Jr., United States Senior Circuit Judge for
the United States Court of Appeals for the Third Circuit, sitting by designation.

the terms and conditions of 10th Cir. R. 36.3.

plaintiff on a disparate impact claim of discrimination, the court entered judgment as a matter of law for defendant. Plaintiff has appealed both rulings. We will affirm.

Plaintiff Stephen A. Banas, Jr. began working for defendant Public Service Company of Colorado in 1965 as an accounting analyst and later became office manager of a subsidiary company. In 1988, he agreed to accept a new position within Public Service as staff assistant to W. Wayne Brown, the defendant's controller.

In 1991, defendant created the Earnings Improvement Task Force, which determined that a company-wide "functional analysis" should be performed, along with other measures, to reduce expenditures by twenty million dollars. Using a functional analysis, each department head examined every job to find ways to make the company operate more efficiently. As a result of this survey, many positions were eliminated. In addition to reducing the number of employees through this process, the company's task force considered other possibilities such as selling off subsidiaries, consolidating organizations, and merging separate entities of the company.

After reviewing each function in the controller's office, Wayne Brown decided that the plaintiff's position and seven others should be eliminated. On August 2, 1991, Brown told plaintiff that his employment would be terminated as of January 1, 1992, and that he was being given as much time as possible to begin looking for other opportunities within the company or to consider early retirement.

At the time of his termination on January 30, 1992, plaintiff was age fifty-six. There is no dispute that he had performed satisfactorily in his various positions with the company and was well regarded by Brown, both professionally and personally.

After plaintiff left the company, the duties that had been assigned to his former position were distributed among Wayne Brown, three division managers, an executive secretary, the controller service excellence board, the accounts payable manager, and the general accounting manager. No one was hired to replace plaintiff and his position was never reinstated.

Of the eight persons in the controller's office whose positions were eliminated, all except plaintiff eventually found employment in other parts of the company. All of those people were younger than plaintiff, three were forty years or older, and four were under age forty.

The following is a list of the individuals and their assignments:

1. Jerome Davis, age 28, was revenue accounting supervisor. His new assignment was as financial accounting supervisor. The elimination of his previous position resulted from the consolidation of three supervisory positions into two.

2. Earl Brotten, age 48, was in financial forecast. Before November 1991, he applied for and was accepted for a position in the general counsel's office.

3. Paula Doane, age 29, was in data entry in accounts payable. She applied for and received a position as a data entry clerk in general accounting.

3

4. Pam Butler, under age 40, had been a property accountant. She transferred to the position of program officer after cross-training for six to nine months.

5. Steve Faison, under age 40, was a property accounting clerk in the controller's office. He was transferred to a position of budget technician after cross-training for nine months.

6. Bill Barnes, age 42, had been a financial accounting coordinator. Before the elimination of his position, he transferred to the position of senior corporate planning modeling analyst.

7. Sandy Adams, age 43, was a senior tax accountant. She had previously applied for and was transferred to the position of ideas work analyst.

The record does not reflect the salary levels of any of these individuals in either their former positions in the controller's office or in their new assignments. The only exception was Earl Brotten, whose salary approximately matched the plaintiff's. There is no indication that plaintiff would have been interested in or qualified for any of the positions to which the other employees transferred.

The district court concluded that because defendant terminated plaintiff while allowing younger employees to transfer, there appeared to be sufficient evidence to support an inference of age discrimination. After further analysis, however, the court determined that plaintiff failed to establish a prima facie case because, unlike the other seven employees, he did not take reasonable steps to find other employment within the

4

company. His efforts of merely checking the job postings and performing minimal investigation were insufficient to sustain an inference of discrimination.

Yet the district court did not end its scrutiny there. Assuming that a prima facie case has been established, the court further determined that plaintiff had failed to show that the functional analysis was a pretext for eliminating his position. As a result, he had "failed to demonstrate that but for Public Services' age discrimination, he would not have been discharged."

The court denied the defendant's motion for summary judgment on the plaintiff's disparate impact theory of discrimination, noting that we had not, as yet, decided whether that method of proof was valid under the Age Discrimination Act. The district judge concluded that the plaintiff's statistical evidence was adequate for a fact finder to decide against defendant. After a jury had found in favor of plaintiff, however, the district court entered judgment as a matter of law based on our opinion in Ellis v. United Airlines Inc., 73 F.3d 999 (10th Cir. 1996), which was issued after the jury returned its verdict.

Plaintiff has appealed asking that we reverse Ellis and reinstate the jury verdict. In the alternative, he contends that the district court erred in granting summary judgment on the disparate treatment count.

I.

In Ellis, after an extended analysis, this Court held that disparate impact claims "are not cognizable under the ADEA." 73 F.3d at 1007. We reviewed the

5

relevant United States Supreme Court opinions, the holdings of other Courts of Appeals, and the legislative history in arriving at that conclusion. Despite the Court's thorough consideration of the issue, plaintiff attacks Ellis' reasoning. We reject that challenge.

Even if we were inclined to question the Ellis ruling -- and we are not of such a mind -- this panel is not free to reverse the holding of a prior panel. Our practice is clear: "We are bound by the precedents of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court." In re Smith, 10 F.3d 723, 724 (10th Cir. 1993) (per curiam); United States v. Taylor, 828 F.2d 630, 633 (10th Cir. 1987).

The district court properly followed our precedent as set forth in Ellis, and the judgment as a matter of law on the disparate impact claim will therefore be affirmed.

II.

We turn now to the district court's grant of summary judgment in favor of defendant on the disparate treatment claim. In Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993), the United States Supreme Court set out the test that guides our review: "In a disparate treatment case, liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision."

In many cases, direct evidence of improper discrimination is difficult to obtain; therefore, a claimant may rely on indirect proof by using the shifting burdens of production procedure outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-

6

04 (1973). A claimant establishes a prima facie case by showing that he was (1) within the protected age group; (2) doing satisfactory work; (3) discharged; and (4) in reduction of force cases, treated less favorably than younger employees. See Jones v. Unisys Corp., 54 F.3d 624, 630 (10th Cir. 1995); see also Rea v. Martin Marietta Corp., 29 F.3d 1450, 1454 (10th Cir. 1994). The burden then shifts to the employer to produce a legitimate, nondiscriminatory reason for the challenged termination. If the employer offers such evidence, the presumption of discrimination established by the claimant's prima facie showing drops out of the picture. Ingels v. Thiokol Corp., 42 F.3d 616, 621 (10th Cir. 1994) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11 (1993).

If plaintiff lacks direct evidence, he may prove that age was a determining factor in the employer's decision by showing that the employer's proffered reasons were really a pretext for age discrimination. Ingels, 42 F.3d at 621. Pretext may be established by showing either that a prejudicial reason was more likely the employer's motive, or that the proffered explanation is not worthy of credence. Rea, 29 F.3d at 1455. In the summary judgment context, if the plaintiff produces both a prima facie case and evidence supporting pretext on the part of the employer, the case should go to the fact finder. Jones, 54 F.3d at 630; Ingels, 42 F.3d at 622. But the mere fact than an employee in the protected class is treated differently than others, does not put the burden on the employer to explain why. The plaintiff must do so and prove that the treatment was caused by intentional discrimination. Rea, 29 F.3d at 1458.

7

In the case at hand, plaintiff established that he was in the protected age group, was performing satisfactorily, and was discharged from employment. The district court determined that plaintiff did not produce a prima facie case because he exerted little effort to obtain another position within the company, in contrast to those who were transferred to other positions. Although the existence of a prima facie case here is a close one, we will assume for purposes of discussion that, because plaintiff was terminated while younger employees were transferred, an inference of age discrimination is permissible. Branson v. Price River Coal Co., 853 F.2d 768, 771 (10th Cir. 1988). Consequently, we will proceed on the basis that plaintiff has met his initial burden of production.

As an alternative basis for its entry of summary judgment, the district court concluded that plaintiff had "failed to advance any evidence to show that the `functional analysis' was a mere pretext for eliminating his position." Defendant submitted unrebutted evidence that the functional analysis was company-wide, covered an organization of approximately 6,500 employees, and was part of a program to save costs. The controller's office -- only one of the company's departments -- abolished eight positions. There is no evidence that the age of the employees was considered in the process, although some of the positions eliminated were held by persons who were younger than plaintiff. Company-wide, apparently some forty-one management personnel were demoted.

The evidence of the company's efforts to cut costs is such that reasonable minds would accept them as worthy of credence. The record does not provide any support for the plaintiff's conclusory statements that the functional analysis process was pretextual. Nor does plaintiff cite any evidence to lead to an inference that his transfer to the controller's staff position in 1988 was in anticipation of the functional review process and his ultimate termination.[2]

Plaintiff relies on the fact that the seven other employees whose positions in the controller's office were eliminated remained with the company and only he was terminated. He argues that his age was the determining factor because the others were younger than he. Although that fact standing alone permitted an inference of discrimination at the prima facie stage, it is insufficient to carry the day for plaintiff after defendant offered nondiscriminatory reasons. See Branson, 853 F.2d at 771 (plaintiff must produce credible evidence of pretext to avoid summary judgment).

The record shows that the seven other controller's office employees applied for other positions, cross-trained in some instances and, in other situations, asked for transfers before their positions were eliminated. In contrast, plaintiff did not apply for any other position. Although he kept abreast of job openings, he did not find one that met his conditions of comparable salary and skill level.

---

[2] We find no record support for the plaintiff's statements in the district court that he was "put on the shelf" in 1989 in preparation for termination and that the functional analysis was simply a pretext to ease him out of the company.

Wayne Brown suggested to plaintiff that he consider the available position of staff assistant to a vice president. Plaintiff, however, declined to apply because he believed he was not qualified and because the salary was ten percent less than what he had formerly received. Plaintiff admitted that he did not explore any possibilities for cross-training.

In an attempt to show discrimination, plaintiff points to the transfer of twenty-eight year old Jerome Davis to the position of financial accounting supervisor. As Wayne Brown explained, he had considered plaintiff as a possibility for that position, but because the opening resulted from the consolidation of three supervisory positions into two, there were three incumbent supervisors available. To have given one of the jobs to plaintiff would have required the demotion of two, rather than one supervisor.

Other than stating the age of Jerome Davis, plaintiff produced no evidence as to the other incumbents, their qualifications, experience, training or the salary level of the position. Plaintiff has not even shown that he would have accepted this assignment. In sum, nothing in the record shows that the defendant's decision to transfer Davis, instead of plaintiff, was motivated by age discrimination.

Our review of some of the other positions to which the plaintiff's co-workers transferred, e.g., data processing, indicate that they probably would not have been the type of work that was of interest to him. Consequently, the fact that other employees applied for and received other positions in these circumstances is not enough to allow an inference that plaintiff was treated differently because of his age. The employees who

10

transferred were not similarly situated and their treatment does not show pretext.  See

Furr v. Seagate Technology Inc., 82 F.3d 980, 988 (10th Cir. 1996).  As we said in

Branson, the ADEA "does not require employers to accord members of the protected

class preferential treatment, but only that they treat age neutrally."  853 F.2d at 772.

Moreover, the plaintiff's qualifications were never at issue.  His position

was eliminated solely on the basis of the functional analysis.  In a case presenting

somewhat similar circumstances, we said "the test for position elimination is not whether

the responsibilities were still performed, but rather whether the responsibilities still

constituted a single, distinct position."  Furr,  82 F.3d at 988.  Here, the plaintiff's tasks

were absorbed by various existing positions.  As we explained in Rea, a plaintiff's

evidence of satisfactory work performance is not "probative because in a reduction of

work force case, 'someone has to be let go,' including satisfactory employees."  29 F.3d

at 1456 (internal citation omitted).

It is unfortunate that plaintiff and others in the company lost employment

after many years of faithful service, but courts are not permitted to second guess an

employer's business judgment when it is based on factors outside the scope of the

statutory prohibition.  See Faulkner v. Super Valu Stores, Inc., 3 F.3d 1419, 1426-27

(10th Cir. 1993) ("The ADEA is not a vehicle for reviewing the propriety of business

decisions"); Ingels, 42 F.3d at 623; Branson, 853 F.2d at 772.   No matter how desirable it

might be to provide job security for at-will employees, we are not permitted to do so

11

through undue enlargement of the ADEA's scope.  As the Supreme Court emphasized in Hazen, there is no disparate treatment under the ADEA when the employer is motivated by facts -- even reprehensible ones -- other than the employee's age.

The judgment of the district court will be affirmed.

Entered for the Court.


Joseph F. Weis, Jr.
United States Senior Circuit Judge