Deborah A. **FLICKINGER** and Jerry L. Flickinger, Individually and as parents and natural guardians of Sara Mae Flickinger, Plaintiffs,

v.

Casimir J. **WANCZYK**, M.D. and Joseph J. Korey, Jr., M.D. and Berks Ob–Gyn Associates, Ltd. and SmithKline Beecham, Clinical Laboratories, Inc., t/a SmithKline Beecham Clinical Laboratories, A Delaware Corporation and SmithKline Beecham Corporation, Defendants.

Civ. A. No. 93–CV–1867.

United States District Court, E.D. Pennsylvania.

Jan. 25, 1994.

Louis A. Bove, Philadelphia, PA, and Thomas C. Cardaro, Washington, DC, for plaintiffs.

John J. Snyder, Philadelphia, PA, for defendants Wanczyk, Korey and Berks Ob–Gyn Associates, Ltd.

Joseph E. O'Neil, Philadelphia, PA, for SmithKline defendants.

### OPINION AND ORDER

VAN ANTWERPEN, District Judge.

Plaintiffs in this action seek damages for the wrongful birth/life of the minor plaintiff, Sara Mae Flickinger, who was born suffering from spinabifida. In addition, plaintiffs seek damages under 42 U.S.C.A. § 1983 for the deprivation of their right under *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147

(1973), to make a timely and informed decision as to whether to terminate the pregnancy. We have jurisdiction pursuant to 28 U.S.C. § 1331. On May 14, 1993 we denied defendants SmithKline Beecham Clinical Laboratories, Inc. and SmithKline Beecham Corporation's Motion to Dismiss and/or for Summary Judgment as premature. There has been an opportunity for discovery and we now consider the motions for summary judgment filed by defendants Casimir J. Wanczyk, M.D., Joseph J. Korey, Jr., M.D. and Berks Ob–Gyn Associates, Ltd., and a separate motion for summary judgment filed by SmithKline Beecham Clinical Laboratories, Inc. and SmithKline Beecham Corporation.

## I. Standard of Review

 Rule 56(c) of the Federal Rules of Civil Procedure provides for summary judgment where the:

> pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.

"The party moving for summary judgment must demonstrate that, under the undisputed facts, the non-movant has failed to introduce evidence supporting a necessary element of his case." *In re Phillips Petroleum Secur. Litigation,* 881 F.2d 1236, 1243 (3d Cir.1989). To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the movant and may not rest on mere denials. *Celotex Corp. v. Catrett,* 477 U.S. 317, 321 n. 3, 106 S.Ct. 2548, 2552 n. 3, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(e)); *see also First Nat. Bank v. Lincoln Nat. Life Ins. Co.,* 824 F.2d 277, 282 (3d Cir.1987). The non-moving party must demonstrate the existence of evidence that would support a jury finding in its favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

## II. Factual Background

For the purposes of this motion, the following facts appear to be undisputed. Sara Mae Flickinger was born on January 31, 1991, suffering from spinabifida, a condition caused by a spinal or neural tube defect. Early in her pregnancy with Sara Mae, Sara's mother, Deborah Flickinger, underwent a maternal serum alphafetoprotein test (hereinafter "AFP test") to determine whether Ms. Flickinger faced an increased risk of bearing a child with a neural tube defect, such as spinabifida. In August of 1990, a sample of Ms. Flickinger's blood was delivered to defendants SmithKline Beecham Clinical Laboratories, Inc. and SmithKline Beecham Corporation (hereinafter "SmithKline"). When a pregnant patient is found to be at said increased risk, then additional tests and procedures are performed to definitively determine if the unborn child has a neural tube defect.

In late August, 1990, SmithKline reported that the AFP test result was normal. Subsequently, defendant Casamir J. Wanczyk, M.D., who was providing Ms. Flickinger with prenatal care, advised Ms. Flickinger that the AFP test result was normal. At that time, Ms. Flickinger was approximately 16–18 weeks pregnant, and at that time, under the laws of Pennsylvania, could, should she have chosen to do so, have had an abortion.

On January 20, 1991, when Ms. Flickinger was approximately 37–38 weeks pregnant, a sonogram was performed which was subsequently reported as showing the baby had hydrocephalus. At that point, Ms. Flickinger's pregnancy had advanced to the point where under Pennsylvania law she could not obtain an abortion. On January 28, 1991, a follow-up sonogram was performed which revealed that the fetus had a spinal defect.

In April of 1991, defendant Joseph J. Korey, M.D. provided additional demographic data (primarily the patient's weight) to the SmithKline defendants and asked them to re-perform the August 1990 AFP test in light of the additional demographic data. The result of the re-performed test was extremely elevated.

Plaintiffs instituted this action in the Court of Common Pleas for Philadelphia County. On April 8, 1993, SmithKline removed the case to this court. The gravamen of plaintiffs' complaint is that the Flickingers would have chosen to terminate the pregnancy had

they known that Sara Mae was afflicted with a neural tube defect. The Complaint sets forth three counts: (1) Wrongful Birth; (2) Wrongful Life; (3) and Deprivation of Civil Rights under 42 U.S.C. § 1983.

For the purposes of opposing both motions for summary judgment, plaintiffs do not challenge the applicability of Pennsylvania law. *See* Memorandum of Law in Support of Plaintiffs' Opposition to SmithKline Beecham Clinical Laboratories, Inc. and SmithKline Beecham Corporation's Motion for Summary Judgment, at 4.

### III. Discussion

### A. § 1983 Claim

■ In *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), the Supreme Court held that a woman's decision to terminate a pregnancy or bring a fetus to term is a privacy right, constitutionally protected by the Fourteenth Amendment. Recently, a plurality of the Court held that where "state regulation imposes an undue burden on a woman's ability to make this [abortion] decision ... the power of the State reach[es] into the heart of the liberty protected by the Due Process Clause." *Planned Parenthood of Southeastern Pa. v. Casey*, — U.S. —, —, 112 S.Ct. 2791, 2820, 120 L.Ed.2d 674 (1992). Thus, regulations which affect a woman's ability to freely obtain abortion services are permissible if "they are not a substantial obstacle to the woman's exercise of the right to choose." *Id.*, — U.S. at —, 112 S.Ct. at 2821.

In their § 1983 claim, plaintiffs assert that the "defendants, under color of law, deprived the plaintiffs of their right to make a timely and informed decision as to whether to terminate the pregnancy at issue in this case." *See* Plaintiffs' Complaint, at 10. In other words, plaintiffs argue that defendants' allegedly negligent conduct in rendering inaccurate fetal screening information acted as a "substantial obstacle" to the Flickingers' abil-ity to make a free and informed abortion decision.

■ A successful § 1983 action requires a showing that a person acting under the color of state law violated the claimant's constitutional rights. *Radich v. Goode*, 886 F.2d 1391, 1395 (3d Cir.1989). Thus, plaintiffs must demonstrate two elements. First, plaintiffs must show that they were deprived of a federally secured right. Second, the deprivation must be committed by a defendant acting under the color of state law. *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978). The "under of color of state law" requirement is met with a showing of "state action." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 928–932, 102 S.Ct. 2744, 2749–2751, 73 L.Ed.2d 482 (1982).

■ In analyzing this claim, we begin by addressing the latter question of state action. Plaintiffs argue that the Pennsylvania's Wrongful Birth Statute, 42 Pa.C.S.A. § 8305 ("§ 8305") provides the basis for defendants' state action. The statute in relevant part provides:

(a) Wrongful birth—There shall be no cause of action or award of damages on behalf of any person based on a claim that, but for an act or omission of the defendant, a person once conceived would not or should not have been born ... Nothing contained in this subsection shall be construed to provide a defense against any proceeding charging a health care practitioner with intentional misrepresentation under the act of October 5, 1978 (P.L. 1109, No. 261), known as the Osteopathic Medical Practice Act, the act of December 20, 1985 (P.L. 457, No. 112), known as the Medical Practice Act of 1985, or any other act regulating the professional practice of health care practitioners.

This statute immunizes health care providers from liability should they be negligent in the provision of fetal screening diagnostic services.[1]

---

1. In *Hatter v. Landsberg*, 386 Pa.Super. 438, 563 A.2d 146 (1989), allocatur denied, 525 Pa. 626, 578 A.2d 414 (1990), the Pennsylvania Superior Court reviewed the legislative history of § 8305(a):

Our review of the legislative history indicates that the legislature primarily was concerned with eliminating suits brought by children or their parents in an effort to recover damages for the failure to abort a child or negligently

Plaintiffs argue that tort liability deters malpractice, and encourages the objectives of proper prenatal testing, genetic counseling, and informed decision making. Under § 8305, plaintiffs assert, a defendant health care worker may, with the express approval of the state and without fear of recourse, negligently deprive a woman of the information necessary to exercise her constitutionally protected right to make an informed decision as to whether to terminate her pregnancy. By removing the liability of health care providers, plaintiffs continue, the state legislature has altered the legal landscape under which a woman exercises her right to choose.

■ Plaintiffs assert that private parties can become state actors due to their insulation from tort liability by state statute. Plaintiffs must show, however, that the State is *responsible* for the specific conduct of which the plaintiff complains. The Supreme Court has stated that:

> [O]ur precedents indicate that a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State. Mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the terms of the Fourteenth Amendment.

*Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982) (citations omitted). We must decide whether § 8305 provides significant encouragement to private doctors and laboratories to infringe upon a woman's right to make an informed choice regarding her pregnancy. We find that the statute provides no such encouragement.

In *Flagg Bros., Inc. v. Brooks, supra,* the Supreme Court examined the constitutionality of a New York statute which provides a procedure whereby a warehouseman conforming to the provisions of the statute can convert a lien into good title. Analogizing the New York statute to a judicial decision to deny relief, the Court held that the State's decision not to act and to permit such private action did not constitute state action:

> If the mere denial of judicial relief is considered sufficient encouragement to make the State responsible for those private acts, all private deprivations of property would be converted into public acts whenever the State, for whatever reason, denies relief sought by the putative property owner.

*Flagg Bros.,* 436 U.S. at 165, 98 S.Ct. at 1738. Thus, the Pennsylvania legislature's decision to deny judicial relief to recipients of negligent information does not convert negligent doctors into state actors. *See e.g. Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 357, 95 S.Ct. 449, 456–457, 42 L.Ed.2d 477 (1974) ("approval by a state utility commission of such a request from a regulated utility, where the commission has not put its own weight on the side of the proposed practice by ordering it, does not transmute a practice initiated by the utility and approved by the commission into "state action.")

Similarly, Pennsylvania's denial of a wrongful birth cause of action does not encourage negligent behavior by doctors or laboratories. Plaintiffs have presented no evidence whatsoever that § 8305 creates incentives for such conduct. Considerations of professionalism, ethics, and community reputation will continue to discipline the providers of fetal screening information. The Pennsylvania legislature has taken no affirmative steps to prevent the continued operation of these social and economic forces.

Our decision is in accord with recent Pennsylvania cases. In *Edmonds v. W. Pa. Hosp. Radiology Assoc.,* 414 Pa.Super. 567, 607 A.2d 1083 (1992), the Pennsylvania Superior Court found that doctors do not become state actors merely due to the operation of § 8305. The court reasoned that the Pennsylvania statute does not encourage the negligent pro-

---

aborting a child. The legislature's expressed overriding concern was to prevent law suits leading to eugenic abortions of deformed or unwanted children.

*Hatter,* 563 A.2d at 150.

vision[2] of fetal screening information by doctors:

> Although the provisions of 42 Pa.C.S. § 8305(a) clearly relieve physicians from liability for negligently failing to provide women with information affecting abortion decisions, we would be engaging in speculation were we to assume that this extinguishment of liability encourages such improper behavior.

*Edmonds, supra* 607 A.2d at 1088.[3] And in *Dansby v. Thomas Jefferson University Hospital,* 424 Pa.Super. 549, 623 A.2d 816 (1993), the Pennsylvania Superior Court addressed the constitutionality of § 8305 and found that § 8305 does not place a government obstacle in the path of a woman's right to choose to abort a fetus. While we are not bound by these decisions in resolving federal issues, we are satisfied that the Pennsylvania courts construe § 8305 in a manner which fails to create a factual predicate for state action under 42 U.S.C. § 1983.

### B. State Claims

 Since we are granting defendants' Rule 12(b)(6) motion on plaintiffs' federal claims, we will also dismiss plaintiff's remaining state law claims contained in Count V of plaintiff's complaint pursuant to 28 U.S.C. § 1367(c).[4] Once we deny liability as to the sole federal claims presented, there is no need to address the merits of the plaintiffs'

---

state law claims. Under these circumstances, the decision to entertain or dismiss the pendent state law claims is within the district court's discretion. Courts should ordinarily decline to exercise supplemental jurisdiction over state law claims when the federal claims are dismissed. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Weaver v. Marine Bank,* 683 F.2d 744, 746 (3d Cir. 1982). Accordingly, we will decline to exercise supplemental jurisdiction over the plaintiffs' state law claims.

### IV. Conclusion

For the foregoing reasons, defendants' motions for summary judgment are granted with respect to Count III of plaintiffs' complaint, and Counts I and II are dismissed without prejudice to plaintiffs' rights to pursue these claims in state court.

### ORDER

AND NOW, this 25th day of January, 1994, consistent with the foregoing opinion, it is hereby **ORDERED** that:

1. Defendants SmithKline Beecham Clinical Laboratories, Inc. and SmithKline Beecham Corporation's Motion for Summary Judgment, filed December 17, 1993 is **GRANTED** with respect to Count III of Plaintiffs' Complaint;

---

**2.** In addition, the *Edmonds* court pointed out that under Pennsylvania law, physicians may be disciplined by the appropriate medical disciplinary boards for making intentional misrepresentations in connection with patient care. *See* 63 P.S. §§ 271.15(a)(2) and 422.41(2). Since § 8305(a) provides no defense to a disciplinary proceeding involving intentional misrepresentations, it clearly does not encourage them. *Edmonds, supra,* at 1087.

**3.** While we agree with the *Edmonds* court's state action analysis as it is presented, we question whether such an analysis was appropriate given the procedural context in which the constitutional challenge to § 8305 arose in *Edmonds.* In *Edmonds,* the defendants raised § 8305 as a defense to common law claims for wrongful birth. In response, plaintiffs challenged the constitutionality of § 8305 under the 14th Amendment to the United States Constitution. It is arguable that the trial court's use of § 8305 in barring the plaintiff's claim itself constituted challengeable state action. *See* Tribe, Constitutional Law,

---

§ 18–6 (1988); *see e.g. Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980) (Court addresses constitutionality of state immunity defense without addressing issue of state action). In *Edmonds,* plaintiffs were not asserting that defendants acted in a manner which violated the constitution; rather, they asserted that § 8305 as a defense was unconstitutional. In contrast to *Edmonds,* we face a § 1983 claim in which defendants' very conduct is alleged to have violated plaintiffs' constitutional rights. In order to hold defendants liable in this case, plaintiffs must demonstrate that defendants' conduct amounted to state action.

**4.** 28 U.S.C. § 1367(c) reads in relevant part:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> . . . . .
>
> (3) the district court has dismissed all claims over which it has original jurisdiction.

**38**

2. Defendants Casimir J. Wanczyk, M.D., Joseph J. Korey, Jr., M.D. and Berks Ob–Gyn Associates, Ltd.'s Motion for Summary Judgment, filed January 4, 1994 is **GRANTED** with respect to Count III of Plaintiffs' Complaint;

3. On Count III of Plaintiffs' Complaint **JUDGMENT** is hereby **ENTERED** in favor of all Defendants; and

4. Counts I and II of Plaintiffs' Complaint are hereby **DISMISSED WITHOUT PREJUDICE** to Plaintiffs' right to pursue these claims in State Court. This case is **CLOSED.**