Frank R. FOBIAN, Plaintiff,

v.

STORAGE TECHNOLOGY
CORPORATION,
Defendant.

Civil Action No. 3:96CV767.

United States District Court,
E.D. Virginia,
Richmond Division.

April 7, 1997.

Thomas Hunt Roberts, Roberts Professional Law Corp., Richmond, VA, for Plaintiff.

Jack Willard Burtch, Jr., Thamer Eugene Temple, III, McSweeney, Burtch and Crump, Richmond, VA, for Defendant.

RICHARD L. WILLIAMS, Senior District Judge.

### MEMORANDUM OPINION

This matter is before the Court on the defendant's motion for summary judgment. For the reasons stated below, the Court GRANTS the motion.

### FACTS

Defendant Storage Technology Corporation ("StorageTek") manufactures, installs and maintains computer memory products. The Plaintiff, Mr. Fobian, began working for StorageTek's predecessor in 1979. He was a Customer Service Engineer, or CSE.

In 1995, StorageTek had 12 CESs in the Richmond office. In late 1995, Mr. Fobian and two other employees were laid-off.[1] These three employees were the oldest CSEs on staff at the time. Plaintiff was 60 years old. The defendant argues that Mr. Fobian was laid off based on "the standard Storage-Tek criteria." Specifically, the company calculated the Aggregate Scores for each CSE's last two evaluations and those employees with the weakest evaluations were laid off.

Plaintiff insists that this scheme is a pretext. He argues that StorageTek intended to fire him before the evaluation process even began. He states that several months earlier, the company decreased his job re-

sponsibilities and would not allow him to attend training sessions.

Count I alleges discharge in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* ("ADEA"), Count II alleges wrongful termination in violation of the public policies set forth in the Virginia Human Rights Act, Va.Code § 2.1–714 *et seq.*

### APPLICABLE LEGAL STANDARDS AND ANALYSIS

Summary judgment is appropriate only when there is no genuine issue of material fact that could lead a trier of fact to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). "In determining whether to grant summary judgment, all justifiable inferences must he drawn in favor of the non-movant." *Miltier v. Beorn,* 896 F.2d 848, 852 (4th Cir.1990) (citing *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14). The non-movant is entitled "to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts resolved favorably to him." *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979). However, to raise a genuine issue of material fact, the non-movant may not rely upon the mere allegations or denials of his pleadings. Fed.R.Civ.P. 56(e). Rather, he must present evidence supporting his position through "deposition, answers to interrogatories, and admissions on file, together with ... affidavits. if any." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

### I. ADEA CLAIM—DISPARATE TREATMENT

To avoid summary judgment on his Age Discrimination in Employment Act claim, the plaintiff has the burden of establishing that he was the victim of discrimination, either by direct evidence of discrimination or by satisfying the *McDonnell Douglas/Burdine* proof scheme. *See Texas Dep't of Community Af-*

---

1. Defendant argues that only two employees were laid-off during the first RIF. The third individual was laid-off three months later. The ex- tent to which the lay-offs constituted one or two lay-offs is a factual question which must be construed in plaintiff's favor at this stage.

*fairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Here, the plaintiff concedes that there is no direct evidence of discrimination (Plaintiffs Response pg. 10).

■ Thus, he must overcome the *McDonnell Douglas/Burdine* proof scheme, as modified to apply to reduction in force cases. In a reduction in force case, a plaintiff makes out a *prima facie* case by showing that: (1) he is in the ADEA protected age group; (2) he was laid off or terminated; (3) at the time of his lay-off or termination, he was performing his job at a level that met his employer's legitimate expectations; and (4) employees younger than he of comparable qualifications were retained in the same position or replaced him. *See, O'Connor v. Consolidated Coin Caterers Corp.,* —— U.S. ——, —— —— ——, 116 S.Ct. 1307, 1309–10, 134 L.Ed.2d 433 (1996); *Burns v. AAF–McQuay, Inc.,* 96 F.3d 728 (4th Cir.1996).

■ If the plaintiff carries this initial burden, a rebuttable inference of age discrimination is created. The employer may rebut this inference by presenting a legitimate, non-discriminatory reason for the termination. *Goldberg v. B. Green and Co., Inc.,* 836 F.2d 845, 849 (4th Cir.1988). At this stage, the inference of discrimination is destroyed. However, the plaintiff may still prevail by demonstrating that the defendant's proffered reason was a pretext for discrimination. *Henson v. Liggett Group, Inc.,* 61 F.3d 270, 274 (4th Cir.1995). To make this demonstration, the employee must show that as between the plaintiff's age and the defendant's explanation, age was the more likely reason for the dismissal, or that the employer's proffered explanation is simply unworthy of credence.

In this case. StorageTek concedes that Mr. Fobian has established a *prima facie* case. (Defendant's motion pg. 12). In light of this concession, the Court turns to the final two stages of the *McDonnell–Douglas/Burdine* proof scheme.

### A. StorageTek's Asserted Rationale for Terminating the Plaintiff

StorageTek has articulated a legitimate, non-discriminatory reason for Mr. Fobian's layoff. During the period in question. the company's Richmond office, where Mr. Fobian was based, lost numerous accounts. In addition. the company experienced rising expenses coupled with decreasing revenues. As early as May, 1995, management realized that a reduction in force was likely. By an electronic memorandum, or e-mail, dated May 31, 1995, Mr. Mechtly, plaintiff's supervisor, advised all of the CSE's to begin considering other opportunities. A copy of this memorandum was distributed to each CSE at the June, 1995 department meeting. A copy of the memo was placed in the mail box of each CSE who did not attend that meeting. Although Mr. Fobian is listed as a recipient, he denies any knowledge of this memo. Thus, for the purposes of this motion, the Court assumes that the plaintiff was not informed of the impending lay-off. In any event, as a result of the memo, two CSE's transferred out of the Richmond area during the summer of 1995.

In September, 1995, managers decided that it was necessary to lay-off two additional employees in the Richmond office. Defendant claims that selection for the layoff was determined using "standard StorageTek criteria." Management used performance and skill-based criteria to determine which two employees would be laid-off. Each year, each employee was evaluated by his or her manager, Mr. Mechtly, the manager in Richmond, evaluated the employees using a prepared written evaluation form covering over forty specific areas. The form also included summary sections covering the CSE's individual accomplishments for the prior year and goals for the coming year. After Mr. Mechtly completed the form and aggregated the scores, he would present the form to his "next level manager," Mr. Duke. Mr. Duke would offer feedback. Then, Mr. Mechtly would meet with tile employee and review the form and the CSE's performance for the year. At the conclusion of the meeting, the CSE would sign and date the review form.

Defendant claims that Mr. Fobian was laid-off because his two most recent evaluations indicate that he had one of the two lowest Aggregate Scores on his performance review and because lie did not possess any skills that other CSE's with higher scores could not duplicate. This is a legitimate/non-discriminatory reason for plaintiff's discharge.

## B. Plaintiff's Evidence of Pretext

██ Plaintiff offers several different theories in an attempt to illustrate the pretextual nature of StorageTek's asserted explanation.[2] First. Mr. Fobian argues that the evaluation scores are flawed in several respects. Second, plaintiff argues the statistical improbability of randomly selecting the three oldest employees for termination. Finally, he attempts to show that StorageTek's desire to terminate him is not related to the evaluation process by adducing evidence that the management had begun treating him less favorably than younger employees.

Mr. Fobian points to several flaws in the evaluation process. For example, Storage-Tek management admits that "CSEs are not rated against each other. They're rated against 42 items in the review and goals section." (Dep. of Mechtly 96–97). Similarly, deposition testimony has revealed that the evaluator, Mr. Mechtly, had very little contact with the employees he evaluated and rarely observed them while working. Thus, plaintiff argues, the evaluation scores are not a valid method for selecting employees for termination. Building upon these inferences, he asks the Court to conclude that the evaluations are merely a pretext for age discrimination. Plaintiff's "evidence" does not warrant this conclusion. At most, he has shown that the evaluator was less than diligent and that the evaluations may be an unreliable tool. However, since he has not shown that the evaluations are biased against older employees, he has not provided evidence of pretext. *EEOC v. Western Elec. Co.*, 713 F.2d 1011, 1016 (4th Cir.1983) ("[T]he qualification assessments were subjective. That appella-

tion, however, does not convert an otherwise legitimate reason into an illegal one.") (citations omitted).

At several different points in the responsive brief, plaintiff notes that it is a mathematical improbability that the three eldest CSEs in the Richmond office of StorageTek would be terminated without reference to age. Plaintiff notes that the probability lies somewhere between the range of .05/1000 and 1/1000. There is no affidavit from an expert detailing the method used in calculating these numbers. There are no exhibits, charts, or graphs designed to explain this hypothesis. In short, there is not one single shred of evidence presented in support of this argument. To support this theory, plaintiff relies on the arguments of counsel exclusively. Even the most cogent arguments, if unaccompanied by actual evidence, will not save a claim at the summary judgment stage. *Fisher v. Asheville–Buncombe Technical College*, 857 F.Supp. 465, 470 (W.D.N.C.1993) (concluding, under similar circumstances, that "the statistical evidence produced ... is simply too speculative to be probative of anything except that Plaintiff's counsel is proficient in mathematics.") (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 433 n. 32, 95 S.Ct. 2362, 2379 n. 32, 45 L.Ed.2d 280 (1975) (statistical evidence not probative where prepared by interested party and not validated by expert statistician)).

Plaintiff also argues that StorageTek had decided to terminate him long before September, 1995. In March, 1995, Mr. Mechtly removed Fobian from primary site responsibility and replaced him with a junior CSE. Although true, this fact provides no evidence of discrimination. Mr. Fobian's testimony indicates that he had been assigned to the night shift from March 1994 to March 1995. He worked alone. (Fobian dep. at pg. 96). Then, he was placed on day shift so that another employee, a younger man, could learn to work night shift. Mr. Fobian "assumed" that he would be given that employee's duties on the day shift. *Id.* There is no

---

2. Mr Fobian also argues that another employee, Mr. Dudek, was also terminated in violation of the ADEA. Mr. Dudek worked at another facility located in Maryland and had another supervisor. This case involves the Richmond facility and the decision to lay-off two of the 12 employees working in that facility. Thus, Mr. Dudek's experience is irrelevant.

indication that this assumption is based on StorageTek's prior practice. He just felt he should get the other person's accounts because "in the normal course of doing business, [he] was qualified." *Id.* at 117. Instead, he was assigned to work as a backup engineer. ·Furthermore. Mr. Fobian does not assert that this job paid less, that it was the type of position frequently bestowed on the least regarded CSE or that it was otherwise viewed as a demotion. He just notes that primary CSEs are assigned specific accounts while secondary backup CSEs fill in when the primary is ill or on vacation.

The only other evidence of "disparate treatment" involves the availability of computer equipment and training opportunities. Fobian clams that others were given new Macintosh computers. When questioned on the issue. Mr. Fobian admitted he did not know how may other employees received Macintoshes, just that he didn't. *Id.* at 97. Furthermore, he "assumed" that these individuals received training on the Macintoshes. The other "training disparities" are also quite speculative. The company offered training on two types of new systems. *Id.* at 114. . Everyone was trained to use one system, "Iceberg." Yet, Mr. Fobian is disgruntled because he did not receive training on the other equipment, "WolfCreek" or "Timberline." When questioned, Mr. Fobian could only recall one individual, out of 11 fellow employees, who had in fact received the training in question. *Id.* Another individual was sent for specialized training in a separate area. *Id.*

Mr. Fobian has failed to demonstrate that he was treated differently than other similarly situated employees. Although he has testified that he was not the first employee to receive a new computer, he has not testified that new computers went to younger employees first. Likewise, he was not the one of two employees chosen to receive special training. This is not evidence of discrimination. It is bald speculation. As such, it is insufficient to withstand summary judgment.

The plaintiff has not met his burden under *McDonnell–Douglas/Burdine.* Thus, the Court GRANTS summary judgment in favor of the defendant.

## II. ADEA—DISPARATE IMPACT

■ The complaint also presents a disparate impact claim. Although a disparate treatment case, the Supreme Court's analysis in *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 609, 113 S.Ct. 1701, 1705, 123 L.Ed.2d 338 (1993), casts considerable doubt on the validity of disparate impact claims. The Court noted that "[d]isparate treatment captures the essence of what Congress sought to prohibit in the ADEA." *Id.* at 610, 113 S.Ct. at 1706. In the concurrence, the Chief Justice joined by Justices Kennedy and Thomas concluded that "there are substantial arguments that it is improper to carry over disparate impact analysis from Title VII to the ADEA." *Id.* at 618, 113 S.Ct. at 1710. As one circuit has noted, "[a]lthough the Court's holding was technically limited to the disparate treatment claim before it, one cannot read that opinion without receiving the strong impression that the Supreme Court is suggesting that the ADEA does not encompass a disparate impact claim." *Ellis v. United Airlines, Inc.,* 73 F.3d 999 (10th Cir. 1996). After *Hazen,* several circuits have concluded that disparate impact claims are no longer viable under the ADEA. *Id.* (noting that the 3rd, 6th and 7th Circuits concur and citing cases); *Furr v. Seagate Tech., Inc.,* 82 F.3d 980, 987 (10th Cir.1996) (same), *but see Smith v. City of Des Moines, Iowa,* 99 F.3d 1466, 1470 (8th Cir.1996) (relying on prior case law and concluding that such claims are still cognizable); *Mangold v. California Pub. Utilities Comm'n,* 67 F.3d 1470, 1474 (9th Cir.1995) (same).

Although the Fourth Circuit has recognized disparate impact claims under the ADEA in the past, it has not addressed the issue since *Hazen, McNairn v. Sullivan,* 929 F.2d 974 (4th Cir.1991). Plaintiff has cited only one case supporting his position,[3] *Arnold v. Postal Service,* 843 F.Supp. 33 (D.Me.

---

3. Or, more accurately, plaintiff has cited numerous cases. Most of them were decided before *Hazen.* Two were decided after the Supreme Court's decision in Hazen. In one, the court refused to resolve the issue. *Csicseri v. Bowsher,* 862 F.Supp. 547 (D.D.C.1994). Thus, only one supports his position.

1993). In *Arnold*, the court relied on the similar language and policies of the ADEA and Title VII to conclude that disparate impact claims are cognizable under the ADEA. *Id.* at 37–38.

The Court, however, is persuaded by the logic of the Tenth Circuit in *Ellis*. As the Tenth Circuit explains. first. the Supreme Court has interpreted section 206(d)(1) of the Equal Pay Act. Based on the language in that section. the Court distinguished Equal Pay Act claims from Title VII claims and refused to recognized disparate impact claims under the Equal Pay Act. *County of Washington, Oregon v. Gunther*, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981). Section 623(f) of the ADEA is almost identical to section 206(d)(1) of the Equal Pay Act. *Ellis* 73 F.3d at 1008. Second, the "ADEA's stated purposes and sections 622 and 623 reflect different approaches for intentional or arbitrary discrimination and the more benign problem of disparate impact." *Id.* Third, in the 1991 Civil Rights Act, Congress explicitly recognized disparate impact claims under Title VII. Although Congress amended portions of the ADEA, it did not add a disparate impact claim under this statute. *Id.* Fourth, the Supreme Court's opinion in *Hazen* implies that disparate impact claims are not cognizable under the ADEA. *Id.* at 1008–09. Fifth, every circuit which has addressed the issue on the merits has interpreted *Hazen* as prohibiting disparate impact claims under the ADEA. *Id.* In addition, the Tenth Circuit notes several policy considerations which caution against continued recognition of this claim. *Id.* at 1010.

Accordingly, the Court holds that disparate impact claims are no longer cognizable under the ADEA. Defendant's motion for summary judgment on this claim is GRANTED.

## III. WRONGFUL DISCHARGE IN VIOLATION OF VIRGINIA PUBLIC POLICY

Count II alleges termination in violation of Virginia's public policy against age discrimination as reflected in the Virginia Human Rights Act, Va.Code § 2.1–714, *et seq.* ("VHRA"). Although Virginia strongly

adheres to the at-will employment doctrine, there is a narrow, well-recognized exception for discharges in violation of public policies set forth in Virginia statutes. *See, e.g., Lawrence Chrysler Plymouth Corp. v. Brooks*, 251 Va. 94, 465 S.E.2d 806 (1996).

Effective July 1, 1995, the General Assembly of Virginia limited the procedural aspects of claims based on the public polices reflected in the VHRA. Relying on these amendments, the defendant insists that plaintiff's claim is no longer cognizable under Virginia law. The parameters of public policy claims such as this one, and the force and affect of the provisions of Virginia Code § 2.1–725, have been the subject of considerable discussion and disagreement. The history and legal tensions inherent in this type of claim were discussed in detail in this Court's most recent opinion discussing "*Bowman* claims." *Perry v. American Home Products*, 1997 WL 109658 (E.D.Va. March 4, 1997). The Supreme Court of Virginia has not considered the effect of these recent amendments. In light of the discussion below, the Court assumes, without deciding, that plaintiff has set forth a cognizable claim.

A recent Virginia Supreme Court decision, however, compels summary judgment in favor of the defendant. *In Jordan v. Clay's Rest Home, Inc.*, 253 Va. 185, 483 S.E.2d 203 (1997), plaintiff, a black female, alleged that she was wrongfully discharged on the basis of her race and in violation of Virginia public policy. The case was presented to a jury. At the close of plaintiff's evidence, the trial court entered summary judgment for the defendant.

On appeal, plaintiff argued that the trial court erred in failing to adopt the *McDonnell Douglas* burden shifting method of establishing a *prima facie* case in discrimination cases. After discussing the historical significance of Virginia's employment-at-will doctrine, the Virginia Supreme Court refused to adopt the *McDonnell Douglas* standard. Rather, it concluded, "Virginia law is well settled that ... in the trial of wrongful discharge cases specifically, a plaintiff may prove a *prima face* case by circumstantial as well as direct evidence." *Id.* (citations omitted).

As discussed in Section I, *supra.* there is no direct evidence of discrimination. The record, as made,[4] does not contain circumstantial evidence sufficiently probative of discrimination to allow a reasonable jury to find in plaintiff's favor. Accordingly, the Court GRANTS summary judgment in favor of the defendant.

### CONCLUSION

Upon careful consideration of the record, the applicable law and the briefs submitted by the parties, the Court GRANTS summary judgment in favor of the defendant on all claims.

It is so ORDERED.

---

4. In his surreply, plaintiff lists several facts which were "set forth in plaintiff's brief in opposition to summary judgment." Many of these facts were not listed in the initial brief. For example, "failure to give the older employees the option to transfer within the company" and "post termination identifying the older employees as being ineligible for rehire." Counsel fails to cite any evidence in support of these conclusions. Thus, these arguments are not properly before the Court.