**Jerry L. BISHOP, Plaintiff,**

v.

**PEPPERTREE RESORTS, LTD., a/k/a Equivest, a/k/a Equivest Financial, Inc., a/k/a Equivest Finance, Inc., a/k/a Equivest Resorts, Inc., Defendant.**

**No. CIV. 1:01CV87.**

United States District Court,
W.D. North Carolina,
Asheville Division.

July 24, 2002.

Wade Hall, Asheville, NC, for plaintiff.

E. Thomison Holman, Adams, Hendon, Carson, Crow & Saenger, PA, Asheville, NC, H. Landis Wade, Jr., Helms, Mulliss & Wicker, PLLC, Charlotte, NC, for defendants.

## *MEMORANDUM AND ORDER*

THORNBURG, District Judge.

**THIS MATTER** is before the Court on Plaintiff's objections to the Memorandum and Recommendation of United States Magistrate Judge Max O. Cogburn, Jr. Pursuant to standing orders of designation and 28 U.S.C. § 636, this Court referred Defendant Peppertree Resorts, Ltd.'s ("Peppertree") motion for summary judgment to the Magistrate Judge for a recommendation as to disposition. The Magistrate Judge entered a detailed memorandum recommending that Peppertree's motion be granted. For the reasons stated below, the Court adopts the Magistrate Judge's recommendation.

### I. STANDARD OF REVIEW

The district court conducts a *de novo* review of those portions of a Magistrate Judge's Memorandum and Recommendation to which specific objections are filed. *See* 28 U.S.C. § 636(b). This Court will not address general objections to the Magistrate Judge's final Recommendation. "A general objection ... has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless." *Howard v. Secretary of HHS*, 932 F.2d 505, 509 (6th Cir.1991). In this Circuit, *de novo* review is unnecessary "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir.1982). Those parts of a Magistrate Judge's Memorandum and Recommendation to which no specific objections are filed are given careful review. *Id.*

Summary judgment is appropriate when there is no genuine issue of material fact and judgment for the moving party is warranted as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party, here the Plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). By reviewing substantive law, the court may determine what matters constitute material facts. *Anderson, supra.* "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Id.* The Defendant as the moving party has the initial burden to show a lack of evidence to support the Plaintiff's case. *Shaw, supra* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If that showing is made, the burden then shifts to the Plaintiff who must convince the Court that a triable issue does exist. *Id.* A "mere scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* Moreover, in considering the facts of the case for purposes of this motion, the Court will view the pleadings and material presented in the light most favorable to the Plaintiff, as the nonmoving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### II. FACTUAL HISTORY

The Plaintiff worked at Peppertree from 1995 to 1996 as a telemarketer, however, his claim is not related to that employment. In 1997, Plaintiff was asked to return to Peppertree by Earl Wallace, his

former supervisor, and work in its telemarketing location in Asheville, North Carolina, known as the West Annex. Deposition of Jerry Leslie Bishop, *attached to* Defendant's Motion for Summary Judgment, filed May 1, 2002, at 9–11, 50–51, 67–69; Affidavit of William H. Sbrocco, *attached to* Defendant's Motion, ¶ 8. He was hired as a Floor Manager at the West Annex in June 1997; at this time he was 53 or 54 years old. Sbrocco Affidavit, ¶¶ 10–11. In June 1998, Plaintiff was promoted from Floor Manager to Assistant Telemarketing Manager; however, his duties remained the same. Bishop Deposition, at 90–91. In the fall of 1999, Peppertree was acquired by Equivest Finance, Inc., and became a wholly owned subsidiary of that company. Sbrocco Affidavit, ¶¶ 14–15. Soon after the acquisition, Peppertree's performance began to suffer, especially in the telemarketing area. *Id.,* ¶ 16. As a result of these difficulties, Peppertree began implementing cost cutting measures, including reductions in pay. *Id.,* ¶¶ 16–21. Plaintiff's pay was reduced, along with that of the other Assistant Telemarketing Managers and their superiors. *Id.*

When these measures did not improve the telemarketing department, a number of Plaintiff's superiors resigned in February and March of 2000. *Id.,* ¶ 22. These included Wallace, who managed telemarketing both at the West Annex and the East Annex in Havelock, North Carolina, and Chuck March, Telemarketing Manager of the West Annex. *Id.,* ¶¶ 4, 22; Bishop Deposition, at 132–35. As a result of these resignations, the three Assistant Telemarketing Managers at the West Annex— the Plaintiff, Faith Hayes, and Rod Patteson were without an immediate supervisor. Bishop Deposition, at 141–42. When Plaintiff reported this difficulty to Don Clayton, Senior Vice President of Sales and Marketing for Peppertree, and asked for the opportunity to manage the tele-

marketing at the West Annex, Clayton agreed. *Id.,* at 145–49, 158. Clayton gave Plaintiff 60 days, beginning May 1, 2000, in which to decrease costs and increase production. *Id.,* at 145–49, 158.

However, on May 14, 2000, Clayton introduced Lee Farthing as the new Telemarketing Director at a meeting at the West Annex. *Id.,* at 199–200. Clayton told Plaintiff that he made the decision because he had not seen substantial improvement at the West Annex; the Plaintiff disputes this conclusion. *Id.,* 199–204. Farthing was also the Director of Marketing for all of Peppertree. Sbrocco Affidavit, ¶ 26. Soon thereafter, Clayton resigned and George Usery from Equivest replaced him.

Farthing designated Plaintiff, now 57, as the Senior Manager in charge of the West Annex, but Plaintiff experienced difficulty with the Assistant Managers, Hayes and Patteson, because they reported directly to and took directions from Farthing, bypassing Plaintiff. Bishop Deposition, at 202. Plaintiff complained to Farthing about this lack of authority a number of times, including one instance where he threatened to take the matter up with Usery. According to Plaintiff, Farthing responded that he would be fired if he did so. *Id.,* at 232–34, 238–39, 251–65.

The day after this conversation, June 29, 2000, Bishop sent an e-mail to Ellen Steele in the Human Resources Department concerning his problems in the West Annex. *Id.,* at 253–54, 265–74; Defendant's Deposition Exhibit 18, *attached to* Bishop Deposition. Plaintiff admitted in his deposition that the e-mail made no mention of age discrimination whatsoever. *Id.,* at 275; Defendant's Deposition Exhibit 18, *supra.* Receiving no response to his e-mail, Plaintiff traveled to Charlotte, North Carolina, the next day and filed a complaint of age discrimination with the Equal Employment

Opportunity Commission (EEOC). When asked during his deposition whether he discussed with any other employee of Peppertree his belief that he was being discriminated against before filing this charge, the Plaintiff answered, "I don't think I would have. That was just something that was my personal business. And I don't think I discussed that with anyone, that I recall, anyway. I don't think I would have done that." Bishop Deposition, at 287. Plaintiff was asked if he told anyone that he was going to file a charge with the EEOC. After clarifying the question, Bishop answered, "No." *Id.,* at 286. He later testified he told both Patteson and Tula Dotsikas, a receptionist at Peppertree, that he was going to Charlotte to file an EEOC charge. *Id.,* at 301–02.

Farthing assumed a new position as Regional Marketing Director for the South beginning July 3, 2000, and March, now 49 years old, returned to the position of Telemarketing Director of the West Annex. *Id.,* at 290–91; Sbrocco Affidavit, ¶¶ 13, 27–28, Exhibit J. Plaintiff returned to performing the same duties he had as Assistant Manager before Wallace departed. Bishop Deposition, at 360. Bishop was informed of this change by a message left on his answering machine while he was in Charlotte filing the EEOC charge. *Id.,* at 319–22.

Around this same time period, Plaintiff was informed by Peppertree management that he had received more Paid Time Off than he was entitled. As a result, $292 was deducted from his salary for the pay period that included the end of July and the beginning of August 2000.[1]

Despite these various personnel changes, pay reductions, and other cost cutting measures, the West Annex re-

mained unprofitable for Peppertree. Affidavit of George B. Usery, *attached to* Defendant's Motion, ¶¶ 13–15; Bishop Deposition, at 236–42. As a result, Usery determined to terminate the entire management team of the West Annex. Usery Affidavit, ¶ 18. During the last week of August 2000, the Plaintiff, Farthing, March, and Patteson were terminated or resigned. *Id.,* ¶ 18. Hayes was demoted and refused a position in another department. *Id.* Some of the management duties performed by the Plaintiff were assumed by Mike Coviak, age 22; Coviak was assigned Plaintiff's desk, phone extension, computer, and parking space. Affidavit of Michael P. Coviak, *attached to* Plaintiff's Response, ¶ 5.

Unfortunately, these efforts did not revive the West Annex to profitability. Usery Affidavit, ¶ 22. After another round of lay-offs in October 2000, the entire West Annex was closed permanently on November 30, 2000. *Id.,* ¶ 24. Over 100 Peppertree employees were affected by the closing. *Id.,* ¶ 24. Peppertree now utilizes an independent contractor to perform its telemarketing function. *Id.*

### III. PLAINTIFF'S CLAIMS AND THE APPLICABLE SUBSTANTIVE LAW

Plaintiff claims that Peppertree discriminated against him in his employment based on his age. "The [Age Discrimination in Employment Act (ADEA)] makes it unlawful for an employer 'to fail or refuse to hire or to discharge any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'" *Mitchell v. Data General Corp.,* 12 F.3d 1310, 1314

---

**1.** These contentions are contained in the parties' arguments. The relevant documents can be found in the record. Bishop Deposition Exhibit 92; Plaintiff's Exhibits 34–35, *at-* *tached to* Plaintiff's Response to Defendant's Motion for Summary Judgment, filed May 17, 2002.

(4th Cir.1993) (quoting 29 U.S.C. § 623(a)(1)). "To establish a claim, a plaintiff must prove, with reasonable probability, that but for the age of the plaintiff, the adverse employment decision would not have been made. Age must have been a determining factor in the employment decision." *Id.* (citing *Lovelace v. Sherwin–Williams Co.*, 681 F.2d 230, 238 (4th Cir. 1982)).

> The burden of proof of an age discrimination claim may be satisfied, as with other types of discrimination claims, by direct evidence or by circumstantial evidence under a method of proof established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668[ ] (1973). Under the *McDonnell Douglas* scheme, once the plaintiff proves a prima facie case of discrimination, the burden of producing a legitimate explanation shifts to the defendant. If the defendant articulates a legitimate nondiscriminatory explanation which, if believed by the trier of fact, would support the conclusion that discrimination was not a determining factor in the adverse employment decision, the presumption created by the prima facie case "drops from the case," and the plaintiff bears the ultimate burden to prove that the defendant intentionally discriminated against the plaintiff.

*Id.*, at 1314–15 (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Fink v. Western Elec. Co.*, 708 F.2d 909 (4th Cir.1983) (adopting the *McDonnell Douglas* scheme for use in ADEA cases)); *see also, Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141–42, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (applying *McDonnell Douglas* scheme). "In meeting the ultimate burden the plaintiff may offer proof that the defendant's explanation was a mere pretext." *Mitchell*, 12 F.3d at 1315.

To establish a prima facie case of age discrimination under the ADEA with circumstantial evidence, the plaintiff must prove a set of facts which would enable the fact-finder to conclude with reasonable probability that *in the absence of any further explanation,* the adverse employment action was the product of age discrimination.

*Id.* (citing *Duke v. Uniroyal, Inc.*, 928 F.2d 1413, 1418 (4th Cir.1991)). In order to state a *prima facie* case in a typical situation dealing with the discharge of only one or a few individuals, a plaintiff must establish: (1) he was in the protected age group; (2) he was discharged; (3) at the time of the discharge, he was performing his job at a level that met his employer's legitimate expectations; and (4) following the discharge, he was replaced by a substantially younger individual. *See, O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996); *Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 430 (4th Cir.2000); *Mitchell, supra.* However,

> in the context of a reduction in force where performance is the announced basis for selection, . . . the employee [must show] that: (1) he was protected by the ADEA; (2) he was selected for discharge from a larger group of candidates; (3) he was performing at a level substantially equivalent to the lowest level of those of the group retained; and (4) the process of selection produced a residual work force including some persons in the group who were substantially younger than him and who were performing at a level lower than that at which he was performing.

*Stokes*, 206 F.3d at 430.

Plaintiff has also raised a claim of retaliatory discharge relating to his filing a complaint with the EEOC. In order to

state a *prima facie* case of retaliatory discharge under Title VII, the Plaintiff must show 1) that he engaged in a protected activity; 2) that the employer took adverse employment action against him; and 3) that a causal connection existed between the protected activity and the adverse action. *See, Von Gunten v. Maryland,* 243 F.3d 858, 863 (4th Cir.2001); *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir.1985). Just as in the context of a claim of discrimination, once the Plaintiff has put forth a *prima facie* case, the burden shifts to Peppertree to produce a legitimate, non-retaliatory reason for the adverse action. *Matvia v. Bald Head Island Mgmt., Inc.,* 259 F.3d 261, 270 (4th Cir.2001); *Ross,* 759 F.2d at 365. If the employer puts forth a legitimate, non-retaliatory reason for the adverse action, then the burden shifts back to Plaintiff to prove that the employer's proffered reason is pretextual. *Id.*

### IV. DISCUSSION

Although the Plaintiff has filed objections to a number of the Magistrate Judge's proposed findings and recommendations, the Court need only consider three of them. First, the Plaintiff objects that the Magistrate Judge failed to consider his allegation of a "disparate impact" claim under the ADEA. Such claims, however, are no longer viable. *Fobian v. Storage Technology Corp.,* 959 F.Supp. 742, 746 (E.D.Va.1997), *aff'd,* 217 F.3d 838 (table), 2000 WL 870494 (4th Cir.2000); *Ellis v. United Airlines, Inc.,* 73 F.3d 999 (10th Cir.1996); *Mullin v. Raytheon Co.,* 164 F.3d 696 (1st Cir.), *cert. denied,* 528 U.S. 811, 120 S.Ct. 44, 145 L.Ed.2d 40 (1999). Second, the Court must consider Plaintiff's objection to the Magistrate Judge's conclusion that he has not put forward any direct evidence of discrimination or retaliation. Third, the Court must consider his objection to the conclusion that Peppertree has put forth a legitimate, non-discriminatory,

non-retaliatory reason for his termination and that Plaintiff has not offered any evidence that this reason is pretextual. Even assuming, without deciding, that Plaintiff's objections to the Magistrate Judge's conclusions regarding his *prima facie* case are well founded, the "ultimate burden of proof" remains with the Plaintiff, and his failure to put forth evidence of pretext make summary judgment appropriate. *Mitchell, supra; see also, Wemmitt–Pauk v. Beech Mountain Club,* 140 F.Supp.2d 571, 578 (W.D.N.C.2001) (assuming *arguendo* that plaintiff had made out a *prima facie* case and finding that summary judgment would be appropriate based on lack of evidence of pretext); *Hudson v. Joseph B. Fay, Co.,* 902 F.Supp. 85, 89 (D.Md.1995) (failure of the plaintiff to offer evidence of pretext and summary judgment for the defendant).

■ The Plaintiff offers only one piece of evidence from his deposition as direct evidence of discrimination. However, that evidence is not admissible. "On a motion for summary judgment, a district court may only consider evidence that would be admissible at trial." *Solis v. Prince George's County,* 153 F.Supp.2d 793, 798 (D.Md.2001). Plaintiff points to the following exchange:

Q: [By Bishop's Attorney]: During the time that you worked there, did anyone make any statements to you about you were too old?

A: Earl Wallace make a statement to me before he left. Because of the leads I was putting in for Vacation Club, I tried to explain to him why I put those in there, and he called me spacey. I took that as absent minded, maybe—

Q: Meaning you were too old?

A: Too old.

Bishop Deposition, *attached to* Plaintiff's Response, at 434. This exchange is a textbook example of leading a witness. Under the Federal Rules, a plaintiff's attorney is not permitted to lead the plaintiff. Fed. R.Evid. 611(c). Furthermore, when asked by Peppertree's attorney earlier in the deposition about the same exchange where Wallace referred to the Plaintiff as "spacey," Plaintiff made no mention of his taking that statement to mean he was "too old." Bishop Deposition, at 123–24. In fact, the Plaintiff testified that Wallace apologized for the statement and that he accepted the apology. *Id.* Thus, the Plaintiff has presented no admissible, direct evidence of discrimination.

The Plaintiff also contends that his designation as a "senior manager" was somehow discriminatory. Again, the Plaintiff can show no evidence in the record that he ever interpreted the term "senior manager" to be a derogatory comment on his age prior to this lawsuit. As such, this argument is unsupported by the record.

■ Neither has the Plaintiff presented direct evidence of intentional retaliation. The only point he raises in support of this position is that March told him that withholding the overpaid amount of paid time off had been made because people were "upset" with the filing of the EEOC charge. However, Plaintiff testified that Diane Kostigen, Peppertree's payroll clerk, notified him before the EEOC charge was filed that he had taken too much paid time off. Bishop Deposition, at 419–22. Bishop wrote Kostigen a letter on July 31, 2000, the day he returned from Charlotte, in which he stated that he attempted to send her an e-mail concerning this information but was not successful in transmitting the message. The letter ended, "But if you think I'm 20 hours over, go ahead and deduct it from my pay." Bishop Deposition Exhibit 92. Plaintiff agreed in his deposition that he authorized the deduction. Bishop Deposition, *supra.* The determination that he exceeded his allowable paid time off was made before anyone at Peppertree knew that the Plaintiff filed an EEOC charge; therefore, it cannot be a retaliatory, adverse, employment action. As such, the Plaintiff's testimony regarding March's statement is irrelevant.

■ Plaintiff does not dispute that the overall performance of the telemarketing group at the West Annex was well below Peppertree's legitimate expectations. Nor does he dispute that the entire management telemarketing team was terminated or given the opportunity to resign in the same week he was fired. Nor does he dispute that the entire telemarketing group in the West Annex was closed within three months of his termination and that Peppertree's telemarketing work is now done by outside independent contractors. As such, Peppertree has offered a legitimate, non-discriminatory reason for terminating the Plaintiff—the poor performance of the telemarketers in the West Annex led to a decision to replace the entire management team and soon thereafter to cease all in-house telemarketing and rely on independent contractors.

■ Furthermore, the Plaintiff has offered no evidence that this proffered reason is a pretext. In support of his argument that the poor performance of the team is a pretext, he relies on the position that every member of the management team who stopped working in the West Annex after August 31, 2000, was over 40 years old. However, this situation is not like the typical reduction-in-force case where some members of a class of workers (*i.e.*, managers, accountants, operators) are terminated and some are retained. Here, the entire management team of a facility was removed. As such, the fact that all the managers were over 40 years

old is hardly evidence of pretext. No workers at the telemarketing management level of any age were retained in the "residual work force." *See, Stokes,* 206 F.3d at 430("(4) the process of selection produced a residual work force including some persons in the group who were substantially younger than [Plaintiff]. . . ."). There was no "residual workforce." Finally, the undisputed fact that the entire telemarketing group in the West Annex was eliminated within three months of Plaintiff's termination and replaced with independent contractors is evidence that the offered legitimate, non-discriminatory reason for Plaintiff's termination—poor performance of the telemarketing group—is not pretextual. Plaintiff has offered no evidence to dispute this contention.

The Fourth Circuit decided a similar issue on nearly identical grounds. *Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507, 512 (4th Cir.1994).

> There is no evidence indicating that [telemarketing] workers holding jobs similar to [Plaintiff's] were retained while he was not. In fact, the evidence clearly demonstrates that all . . . worker[s] in the . . . department [were] laid off. Moreover, as the district court pointed out, it would make little sense for [Peppertree] to shut down an entire . . . department—and contract out its business—simply to rid itself of that department's [57] year old supervisor. In fact, both sides agree that the . . . department was experiencing significant difficulties. . . . As a result, [the Court] cannot identify any significant evidence supporting [Plaintiff's] claim of age discrimination.

*Id.*

## V. CONCLUSION

Having determined that Plaintiff has not presented direct evidence of retaliation or discrimination and that he has not offered any evidence to dispute Peppertree's stat-

ed legitimate, non-discriminatory or non-retaliatory reason for terminating him, the Court need not consider his other objections. There are no material issues of fact still in dispute as to these issues. The Plaintiff has not objected to the Magistrate Judge's conclusion regarding his state law claim, and, after careful review, the Court finds that conclusion to be in accordance with the facts and existing law. As such, judgment as a matter of law for Peppertree on all claims is appropriate.

**IT IS, THEREFORE, ORDERED** that the Defendant's motion for summary judgment is **ALLOWED,** and this matter is dismissed by way of Judgment filed herewith.

### *JUDGMENT*

For the reasons set forth in the Memorandum and Order filed herewith,

**IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED** that the Defendant's motion for summary judgment is **ALLOWED,** and this matter is hereby **DISMISSED WITH PREJUDICE** in its entirety.